THOMAS MARTIN AYRE AND BALTIMORE NEWS
CENTER, INC. *v.* STATE OF MARYLAND

[No. 138, September Term, 1980.]

*Decided August 31, 1981.*

The cause was argued before MURPHY, C. J., SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*William E. Seekford* for appellants.

*David H. Feldman, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court. MURPHY, C. J., concurs in the result.

The two defendants prosecuting this appeal, Baltimore News Center, Inc. and its corporate officer, Thomas Martin Ayre, were convicted by a jury in the Criminal Court of Baltimore for distributing obscene matter in violation of this State's criminal code. Preliminarily, the State contends by its motion to dismiss this appeal that neither the record in this criminal cause nor the particular substantive issue we address is properly before this Court, views with which, after a brief explication of the facts, we shall express our disagreement. Moreover, reaching the merits, we conclude that reversals of these judgments are necessitated because of the absence of valid charging documents, and it is thus unnecessary that we further review the several additional issues raised by counsel for the petitioners.

On May 9, 1979, Baltimore City police officer William Bertazon entered the establishment of the News Center at 428 East Baltimore Street and purchased from petitioner Ayre for $12.50 a magazine denominated "Swedish Erotica #22." Based on this purchase, charging documents were issued alleging that each petitioner "on or about 9 May, 1979 at 428 E. Baltimore Street unlawfully did sell a magazine entitled 'Swedish Erotica #22' which was reviewed by Judge Ciotola and found to be obscene in violation of Annotated Code of Maryland, Article 27, Section 418" (1957, 1976 Repl. Vol., 1980 Cum. Supp.). The trial on these charges resulted in guilty verdicts against both defendants, and, upon sentencing, appeals were noted on February 14, 1980, to the Court of Special Appeals. Two successive motions were later filed in that court by petitioners under Maryland Rule 1025 b to extend the time for transmission of the record, necessitated by the inability of the court stenographer to transcribe

the testimony so that the record could be forwarded to the appellate court within the 60-day time limit imposed by Rule 1025 a. When a third motion to extend the time for filing the record was docketed one day late, on August 14, 1980, the intermediate appellate court denied the relief sought as untimely, observing that the court was "without jurisdiction to grant relief requested." Upon denial by the appellate court of the petitioners' motion for reconsideration, the Criminal Court of Baltimore, when informed of this action, struck on September 17, 1980, the order for appeal, ostensibly acting pursuant to the authority vested in it by Rule 1013. This dismissal, however, with the consent of the assistant state's attorney, was vacated by the trial court twelve days later and the clerk of the criminal court was ordered to "transmit the record to the Clerk of the Court of Special Appeals for that Court's disposition." After the record was forwarded to the appellate tribunal, the State moved the intermediate court to dismiss the "reinstated" appeal (as the assistant attorney general terms it) on the ground that only the appellate court can extend the time for filing the record, and thus the trial court lacked authority to vacate its order striking the appeal. Agreeing with this contention, a three judge panel of the Court of Special Appeals dismissed the cause, and we granted certiorari.

We first address the propriety of the Court of Special Appeals' action in dismissing the appeal to that court. As an initial matter, we believe any contention that the appeal was correctly dismissed because the intermediate appellate court properly denied the earlier motion to extend the time for filing the record, when the delay was caused solely by the inability of the court stenographer to transcribe the proceedings, is foreclosed by our opinion in *Uhler v. Real Properties, Inc.*, 289 Md. 7, 421 A.2d 966 (1980), and we do not understand the State to argue to the contrary.[1] Rather,

---

1. In the *Uhler* case, we stated:

If the existence of excusing conditions ... is not controverted, or, if controverted, it appears to the Court of Special Appeals that the delay was occasioned by the ... inability of ... the court stenographer ..., then the appeal cannot be dismissed for failure to

the crux of the State's assertion of the correctness of the dismissal by the intermediate court is that the Criminal Court of Baltimore possessed authority to strike the appeal under Rule 1013, but upon doing so, lost all jurisdiction to reconsider the matter. Consequently, under this view, since no appeal was noted from the trial court's original dismissal order, and since the criminal court was not authorized to vacate that order, the Court of Special Appeals was correct in striking the appeal which was ostensibly revitalized when the trial court vacated its dismissal order. In making this argument, the State necessarily contends that the trial court possesses no revisory power over its appeal nullification order, and to this end asserts that both section 6-408 of the Courts Article (1974, 1980 Repl. Vol.) and Rule 625, which authorize certain revisory actions, apply only in civil proceedings.[2] The State appears to be correct as to Rule 625, *see* Rule 1 a 1 (scope of rules). As for section 6-408[3], it would seem that the critical inquiry is the scope to be given the terms "judgment" and "court" as used in this provision, words which are not defined in the statute. A facial examination of the enactment reveals nothing in this remedial legislation, or its context in the Court's Article, that necessarily dictates the narrow application the State advances. In any event, we need not resolve the question of the applicability of this statute to criminal causes, for what the State has overlooked is that "[i]n Maryland all judgments are under

---

transmit the record within the time prescribed. *Id.,* 289 Md. at 21, 421 A.2d at 973.

**2.** The two rules which pertain to the revisory power of the Court contained in the criminal chapter of the Maryland Rules are not applicable in the circumstances involved here. Rule 774 concerns the revisory power over the sentence, and Rule 770 c is limited in scope to revisory power and control over "the judgment to set aside an unjust or improper verdict and grant a new trial."

**3.** Section 6-408 provides as follows:

For a period of 30 days after the entry of a judgment, or thereafter pursuant to motion filed within that period, the court has revisory power and control over the judgment. After the expiration of that period the court has revisory power and control over the judgment only in case of fraud, mistake, irregularity, or failure of an employee of the court or of the clerk's office to perform a duty required by statute or rule.

the control of the court during the term in which they are entered, and during that time the court has inherent power to strike out or modify judgments in both civil and criminal cases." *Madison v. State,* 205 Md. 425, 431, 109 A.2d 96, 99 (1954). In the absence of a statute or rule either modifying or rescinding this power, such authority survives. See *Owen v. Freeman,* 279 Md. 241, 245, 367 A.2d 1245, 1247-48 (1977); *Scott v. State,* 223 Md. 376, 381, 164 A.2d 716, 719 (1960), and numerous citations therein. *See also* J. Poe, *Pleading and Practice* § 388 (5th ed. by H. Tiffany 1925). So, assuming the State is correct in its assertion that no rule or statute exists authorizing or otherwise regulating the vacation of the dismissal order, the Criminal Court of Baltimore possessed inherent authority to strike its judgment dismissing the appeal at anytime during the term of court in which that order was rendered. By local rule, the term of the court with which we are here concerned was specified to commence on the second Monday in September (September 8, 1980) and run until the second Monday of the following January so that the intervening revisory order of September 29 was entered prior to the expiration of the existing court term. See Rule 21 of the Rules of the Supreme Bench of Baltimore City.[4] This being true, the State is incorrect in its assertion that the Criminal Court of Baltimore lacked authority to strike its order of dismissal, and in light of our holding in *Uhler,* there exists no basis for the Court of Special Appeals' dismissal of the petitioners' appeal in this case.

Before moving to explain why reversal of these convictions for defective charges is obligatory, we pause to deny the State's motion to dismiss consideration of this particular issue, and explain our reasons. The petitioners argue that the trial court erred in denying their pretrial motion to dismiss the charging documents which was grounded, in part, on the contention that the instruments "failed to state all the essential elements of the offense" of which they were

---

**4.** All circuit and local rules, with specific exceptions not pertinent here, were rescinded effective January 1, 1981, after the date of this revisionary order, by Maryland Rule 1 f. The terms for the courts of Baltimore City, identical to the former local rule, are now delineated in Rule 1206 c.

purportedly accused, and thus were fatally defective. The State counters in its motion to dismiss filed in this Court that the failure to advance this contention in the petition for certiorari forecloses examination of the issue here. While "ordinarily", based on Rule 813 a, this motion would be granted, under the unusual circumstances presented here, we deem it proper to exercise the discretion which that rule provides and consider the issue.[5]

Turning now to the substantive issue raised by petitioners which we address, it is clear that the pretrial motion to dismiss the charges should have been granted by the trial court because the charging documents were defective for failure to properly and adequately charge the two defendants here. The provision of the code for which appellants ostensibly stand convicted provides:

> Any person who knowingly sends or causes to be sent, or brings or causes to be brought, into this State for sale or distribution, or in this State prepares, publishes, prints, exhibits, distributes, or offers to distribute, or has in his possession with intent to distribute or to exhibit or offer to distribute, any obscene matter is guilty of a misdemeanor. [Code (1957, 1976 Repl. Vol., 1980 Cum. Supp.), Art. 27, § 418 [6]].

---

**5.** The somewhat novel situation, to which we refer, results from the Court of Special Appeals' dismissal of the appeal prior to the filing of briefs by the appellants, and thus before they had an opportunity to make known their assignments of error. We granted certiorari primarily to consider the propriety of this dismissal action, and incident thereto, in the interest of judicial economy, included within the scope of our writ the substantive issues presented by the petition but not yet posed in the intermediate appellate court. In view of this procedural setting, the fact that both parties have briefed and argued the point here, and the fact that a reversal by this Court solely on the procedural issue would authorize the appellants to raise this substantive question before the Court of Special Appeals on remand, we conclude that there is presented here one of the rare occasions that justifies the exercise of the discretion granted us by Rule 813 a to consider the point.

**6.** While a reading of this statute arguably reveals some uncertainty as to whether "distribution" is subject to the "knowing" requirement, the State does not argue that knowledge is not made a part of the crime for which these defendants stand convicted, and for good reason, for scienter, to some degree, is a requisite for a constitutionally permissible prosecution under a criminal obscenity statute. See Ginsberg v. New York, 390 U.S. 629,644-45, 88 S. Ct. 1274, 1283, 20 L.Ed.2d 195 (1968); Mishkin v. New York, 383 U.S. 502, 510-12, 86 S. Ct. 958, 964-65, 16 L.Ed.2d 56 (1966); Smith v. California, 361 U.S. 147, 150-55, 80 S. Ct. 215, 217-19, 4 L.Ed.2d 205 (1959); Woodruff v.

Each of the appellants here was charged with "unlawfully [selling] a magazine entitled 'Swedish Erotica #22' which was reviewed by Judge Ciotola and found to be obscene in violation of . . . section 418." As we view these charging documents, they are deficient, particularly in this case, in two respects: (i) they fail to allege directly that the magazine was obscene; and (ii) there is a failure to allege the "knowing" element of the crime purportedly charged.

In discussing the deficiencies of the accusations, we think it clear the assertion that Judge Ciotola reviewed the magazine and found it to be obscene is not a direct allegation that this material is in fact obscene. We have searched our criminal statutes in vain to find a provision that makes unlawful the selling of a magazine determined to be obscene by Judge Ciotola, or, for that matter, any other judge of this State. Moreover, it cannot be disputed that the charging document fails to expressly accuse the defendants with distributing obscene matter *knowingly,* which awareness, as used in this provision, is defined in the preceding section 417(4) to be "knowledge of the character and content of the subject matter." We think it quite apparent, and the attorney general would seem not to dispute, that both this described state of mind and the requirement that the material be obscene are constituent components of this offense, ones without which a conviction could not be sustained, and thus essential elements of the criminal conduct proscribed by section 418. *See Jenkins v. State,* 215 Md. 70, 74-77, 137 A.2d 115, 117-18 (1957). What the State does contend, however, is that the "practical needs which an indictment is intended to supply" are served by these charges as written, and that "rigid formalism in the construction of indictments . . . [would be] 'a blemish and inconvenience in the law, and the

State, 11 Md. App. 202, 227-30, 273 A.2d 436, 450 (1971). Lest there be any confusion, as we read the provision, all the various acts described therein are made criminal only if they are committed knowingly. The element of scienter required by the statute is defined in the preceding section as "knowledge of the character and content of the subject matter," Art. 27, § 417(4), which complies with the constitutional minimum requirement. *See* Mishkin v. New York, *supra,* 383 U.S. at 510-11, 86 S. Ct. at 964.

administration thereof, [allowing] more offenders [to escape] by the over easy ear given to exceptions in indictments, than by their own innocence.'" (quoting 2 M. Hale, The History of the Pleas of the Crown 193 (1st American ed. 1847)).

Our analysis begins by examining the role the charging document plays in our justice system.[7] Article 21 of the Maryland Declaration of Rights ensures "[t]hat in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence." The purposes served by these organic requirements concerning the criminal charge are several: (i) to put the accused on notice of what he is called upon to defend by characterizing and describing the crime and conduct; (ii) to protect the accused from a future prosecution for the same offense; (iii) to enable the defendant to prepare for his trial; (iv) to provide a basis for the court to consider the legal sufficiency of the charging document; and (v) to inform the court of the specific crime charged so that, if required, sentence may be pronounced in accordance with the right of the case. See *State v. Canova,* 278 Md. 483, 498-99, 365 A.2d 988, 997 (1976); *Lank v. State,* 219 Md. 433, 436, 149 A.2d 367, 368 (1959). *See also Russell v. United States,* 369 U.S. 749, 763-69, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Cruikshank,* 92 U.S. 542, 558, 23 L.Ed. 588 (1876). We have recognized several times in the past that, in order to place an accused on adequate notice, two different types of information ought to be provided by the charging document. First, it is essential that it characterize the crime, and second, it should furnish the defendant such a description of the particular act alleged to have been committed as to inform him of the specific conduct with which he is charged. *See State v. Canova, supra,* 278 Md. at 498-99, 365 A.2d at 997; *State v. Lassotovich,* 162 Md. 147, 156, 159 A. 362, 366 (1932); *Bosco v. State,* 157 Md. 407, 409-10, 146 A. 238,

7. By Rule 702, "charging document" is defined as a written accusation filed in court alleging that a defendant has committed an offense, and includes an indictment, information, and other specified types of formal criminal accusations.

238-39 (1929); *Armacost v. State,* 133 Md. 289, 293-94, 105 A. 147, 148-49 (1918). As to the former of these dual requisites, where a statutory offense is alleged, it has generally been held in Maryland that, at least where the terms of the statute include the elements of the criminal conduct, the crime may be sufficiently characterized in the words of the statute. *State v. Canova, supra; Bosco v. State, supra; State v. Lassotovich, supra.* Moreover, we have acknowledged the efficacy of certain statutory short form indictments "provided the simplified form contains the essential elements of the crime it purports to charge." *Pearlman v. State,* 232 Md. 251, 257-58, 192 A.2d 767, 771 (1963), *cert. denied,* 376 U.S. 943 (1964) (and cases cited therein). As stated in *Neusbaum v. State,* 156 Md. 149, 156, 143 A. 872, 875 (1928), "while [the legislature] may simplify the form of an indictment or information, [it] cannot dispense with the necessity of placing therein a distinct presentation of the offense containing allegations of all its essential elements." Likewise, in reference to the informative aspect of a charging document, failure of the accusation to contain information sufficient to advise the accused of the particular conduct alleged to have been committed renders the allegation subject to attack, and this requirement exists quite independent of the necessity to include all the essential elements of the crime. *State v. Canova, supra,* 278 Md. at 498-99, 365 A.2d at 997-98; *State v. Lassotovich, supra,* 162 Md. at 156, 159 A. at 366.

The petitioners here focus on the failure of the charge to allege essential elements required by and defined in the statute; we therefore concentrate our analysis on the characterization of the crime prerequisite to a valid charging document. Long ago, in *Kearney v. State,* 48 Md. 16, 23-24 (1877), this Court warned that

> [t]he want of a direct allegation of any thing material in the description of the substance, nature, or manner of the crime, cannot be supplied by intendment, and hence it has always been held, that it is an essential requisite in every indictment that it should allege all matters material to consti-

tute the particular crime charged, with such positiveness and directness, as not to need the aid of intendment or implication.

In reference to charges alleging the violation of a statutory crime, our predecessors continued:

[W]here the words of the statute are descriptive of the offense, the indictment should follow (in substance at least) the language of the statute, and expressly charge the described offense on the defendant, or it will be defective; it is necessary that the defendant should be brought within all the material words of the statute and nothing can be taken by intendment. [*Id.*]

We espouse no novel doctrine in announcing that under the law of this State, in charging documents the elements to constitute the offense are to be averred. *Horner v. State,* 49 Md. 277, 284 (1878); *State v. Canova, supra; Putnam v. State,* 234 Md. 537, 541, 200 A.2d 59, 61 (1964); *Pearlman v. State, supra; Baker v. State,* 6 Md. App. 148, 156, 250 A.2d 677, 682-83 (1969). Article 21 of our Declaration of Rights imposes no requirement unduly burdensome, and parallels similar mandates existing by virtue of the constitutions of the federal government and many of our sister states. *See, e.g., Russell v. United States,* 369 U.S. 749, 763-64, 82 S. Ct. 1038, 8 L.Ed.2d 240 (1962); *State v. Strickland,* 609 S.W.2d 392, 395 (Mo. 1980); *People v. Hall,* 425 N.Y.S.2d 56, 57, 48 N.Y.2d 927, 401 N.E.2d 179 (1979); *State v. Hunter,* 299 N.C. 29, 261 S.E.2d 189, 197 (1980). The failure to allege material elements of the offense is not a mechanical defect in the charge, and thus cannot be brushed off by the facile citation of cases which indicate that the modern trend of courts is to reject outworn legalistic formulas for criminal allegations. We deal here not with hypertechnical rules of pleading which plague unwary prosecutors and free fortuitous defendants, but rather a requirement imposed upon the State as a constitutional minimum. As was stated by Chief Judge Marbury for this Court over thirty-five years ago:

To the lay mind all of these things are technicalities which should not interfere with prosecution for a crime. This point of view is based upon an assumption, which may be true in many cases, that the party charged knows what he is charged with, and therefore he is not harmed if the crime is not very definitely defined. The purpose of requiring an indictment, however, and of requiring that indictment to set specifically the crime charged, is to protect the innocent man who may be wrongfully charged and who may know nothing whatsoever about the crime . . . . [Indictments] are not intended to afford means by which a party, accused of crime, can escape trial because of inconsequential omissions, but the principle must be maintained that the substantial components of the crime must be set out with such particularity that the party accused knows what it is he is being charged with, so that, if he is tried, the recitals in the charge may be sufficient to protect him from a second trial for the same offense. An objection made on the ground that an indictment fails in these particulars is not a technical objection; it is one that goes to the very heart of the law, and it must be seriously dealt with. [*Imbraguglia v. State,* 184 Md. 174, 177-78, 40 A.2d 329, 330 (1944).]

Measured by these considerations, the charging documents in this case are defective and, accordingly, it was error for the trial court to deny the pretrial motions to dismiss on this ground. The absence of direct allegations of knowledge and obscenity, particularly taken together, render each charge substantively insufficient. The problem presented by the case before us is quite different than those faced in *State v. Coblentz,* 167 Md. 523, 528-29, 175 A. 340, 343 (1934), and *Bosco v. State,* 157 Md. 407, 410, 146 A. 238, 239 (1929), upon which the attorney general relies. In *Bosco,* the defendant was convicted of an attempt to bribe a justice of the peace, a statutory offense which did not contain any express

requirement of knowledge on the part of the defendant of the official character of the officer. This Court upheld the indictment on the ground that it was laid in the language of the statute, and then went on to observe that the allegation of scienter "is sufficient if it is necessarily implied from a statement of the acts which constitute the offense." *Id.* at 410, 146 A. at 238-39. A reading of the indictment in that case, which we set out in the margin, indicates that the element of knowledge in that context, if required at all, was necessarily averred from the conduct alleged, and thus expressed in the indictment." [8] In *Coblentz,* this Court was again faced with the sufficiency of an indictment written in the words of the statutory offense charged. There, however, the statute (and consequently the indictment) contained the disputed allegation of fraud, and the appeal was prompted by the trial judge's ruling that that allegation of fraud was insufficient to comply with the certainty and definiteness requirement in an indictment. While there is dicta in *Coblentz* which can be read as supportive of the State's position, the decision in that case did not turn on the failure to allege an essential element of the crime charged. We therefore do not believe these cases require a result different from that reached here.

Nor are the defects in these particular charging documents ameliorated by the citation of the statutory section, the violation of which the defendants were intended to be charged; reference to the criminal enactment does not supply the missing elements and satisfy the requirements of our

---

**8.** The grand jurors of the State of Maryland, for the body of Carroll County, do on their oaths and affirmations present that Peter Bosco, late of said county, on the second day of October, in the year of our Lord one thousand nine hundred and twenty-eight, at Carroll County, aforesaid, did unlawfully, wilfully and corruptly offer to give George E. Benson, who was then and there a justice of the peace of the State of Maryland, in and for Carroll County, having criminal jurisdiction, a certain envelope containing money in an attempt to bribe the said George E. Benson, justice of the peace as aforesaid, to influence the said George E. Benson, justice of the peace as aforesaid, to decide in his favor a certain prosecution then pending before the said George E. Benson, justice of the peace as aforesaid, against the said Peter Bosco on a charge of unlawfully selling intoxicating liquors within Carroll County contrary to the form of the statute in such case made and provided and against the peace, government and dignity of the State.

constitution.[9] It takes little imagination to foresee that the State's contention, if accepted, would obviate the necessity of alleging *any* material element of the offense, for any distinction which might be drawn between supplying a crucial element by citation of the statute and supplying all essential allegations in this manner is so fine as to be well-nigh invisible. In regard to the requirement of the sixth amendment to the federal constitution parallel to this State's Declaration of Rights' Article 21, it has been said that the failure of an indictment to allege knowledge of falsity when such knowledge is made an element of the offense purportedly charged

> was not cured by the fact that each count cited the statute that appellant is alleged to have violated. Although the statutes in question explicitly require knowledge of the falsity, if this were enough to cure a deficient statement, then almost no indictment would be vulnerable to attack; for it is a common practice in indictments to cite the statute that is alleged to have been violated. We have been cited to no authority indicating that an indictment can be cured in such a fashion. Indeed, the cases, while not discussing the point explicitly, seem to imply that an indictment that fails to allege all the elements of the offense required by the statute will not be saved by simply citing the statutory section. [*United States v. Berlin,* 472 F.2d 1002, 1008 (2nd Cir. 1973), *cert. denied,* 412 U.S. 949 (1973); *United States v. Wabaunsee,* 528 F.2d 1, 3-4 (7th Cir. 1975); *United States v. Beard,* 414 F.2d 1014, 1015-17 (3rd Cir. 1969); *Robinson v. United States,* 263 F.2d 911, 911-12 (10th Cir. 1959).]

---

**9.** While authority for each count charged is required to be furnished by Rule 711 a, specifically by that rule error in, or omission of, this citation constitutes grounds for neither dismissal of a charging document nor reversal of a conviction. This reference exists as a matter of convenience to the parties and the court, and thus possesses no substance of its own.

In this case, we are especially hesitant to conclude that the missing elements of knowledge and obscenity are supplied by reference or implication since both these statutory requirements, in the context of this criminal obscenity enactment, are to at least some degree mandated by the federal constitution as a prerequisite to a permissible prosecution. *See* note 6, *supra.* For these reasons, we are quite unwilling to wash Article 21 of its informative substance, and we cannot agree with the State that these charging documents are sufficient to withstand the petitioners' attack.[10]

> *Order of the Court of Special Appeals reversed and case remanded to that court with instructions that it reverse the judgments of conviction and sentence entered by the Criminal Court of Baltimore and remand the cause to that court with instructions that it dismiss the charging documents.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*

---

10. We note that a panel of the Court of Special Appeals, in an opinion by Chief Judge Gilbert, arrived at a similar conclusion recently in Fitzsimmons v. State, 48 Md. App. 193, 426 A.2d 4 (1981).