810 A.2d 435

**Terry Hugh THOMPSON,**

**v.**

**STATE of Maryland.**

**No. 5, Sept. Term, 2002.**

Court of Appeals of Maryland.

Nov. 4, 2002.

474

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, and Stacy W. McCormack, Asst. Public Defender, on brief), Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BATTAGLIA, Judge.

Having been convicted of possession of marijuana, possession with intent to distribute marijuana, and possession of controlled paraphernalia, Terry Hugh Thompson ("Thompson") asks us to consider whether the trial judge erred when he permitted a mid-trial amendment to the indictment altering statutory references in the body and at the end of the count charging Thompson with possession of controlled paraphernalia. Thompson also alleges that the trial judge erred by adding inappropriate language in the jury instruction regarding the "duty to deliberate." We conclude that, because the amendment to the indictment was not a "change in the character of the offense charged," no prejudice befell Thompson. We also find that the language used by the trial judge, instead of the "duty to deliberate" instruction, was erroneous and prejudicial to Thompson; therefore, we reverse the Court of Special Appeals and remand for a new trial.

## I. Background

On April 27, 2000, Detective Joseph New and other officers of the Montgomery County Police Department executed a search warrant for 2101 Forest Glen Road, Silver Spring, Maryland. During the search, the officers recovered a black bag containing numerous glassine baggies and a digital scale on the night stand of Thompson's bedroom. In addition, three bags of marijuana,[1] cash totaling $190.00, a pack of rolling papers, a box of Philly Blunt cigars, sandwich bags, and a pipe [2] were also recovered in the same room.

Thompson was arrested and interviewed after receiving his *Miranda* warnings. During that interview, Thompson admit-

---

1. It was determined after the search that the substances found in the three baggies were 30.5 grams, 15.69 grams, and 1.72 grams, respectively, of marijuana.

2. Analysis showed that the pipe contained marijuana residue.

ted that the marijuana belonged to him for his own personal use, although he sometimes sold some to his friends.

Thompson was indicted on charges of possession with intent to distribute a controlled dangerous substance in violation of Maryland Code Art. 27, Section 286(a)(1) (1957, 1996 Repl. Vol.), possession of controlled paraphernalia in violation of Maryland Code Art. 27, Section 287A (1957, 1996 Repl.Vol.), and possession of a controlled dangerous substance in violation of Maryland Code Art. 27, Section 287(a) (1957, 1996 Repl. Vol.).

The Second Count, possession of controlled paraphernalia, contained the following language:

> The Grand Jurors of the State of Maryland, for the body of Montgomery County, upon their oaths and affirmations, present that **TERRY HUGH THOMPSON,** on or about April 27, 2000, in Montgomery County, Maryland unlawfully did possess controlled paraphernalia in sufficient quantity to and under circumstances which reasonably indicate an intention to use such items for the illegal distribution and dispensing of a controlled dangerous substance, to wit: a digital scale, glassine baggies, Philly blunt cigars, rolling papers, and a wooden pipe, in violation of Article 27, Section 287A of the Annotated Code of Maryland, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State. (Possession of Controlled Paraphernalia, Article 27, Section 287A)

Thompson's trial in the Circuit Court for Montgomery County began on December 5, 2000. On the final day of trial, the State moved to amend the Second Count by striking the statutory references to Maryland Code, Art. 27, Section 287A and adding, in their stead, references to Article 27, Section 287(d)(2). In unsuccessfully objecting to this amendment, Thompson iterated that it would alter the punishment he could face from a fine to a potential of a one-year incarceration for this count.

At the close of arguments, the trial judge indicated he was going to instruct the jury with what he called the "attitude of jurors" instruction. Thompson objected to the court's proposed instruction and indicated his preference for the "duty to deliberate" Maryland Criminal Pattern Jury Instruction, (MPJI–Cr) 2:01.[3]

Thompson's attorney excepted to the instruction, and Thompson was convicted on all three counts. The Court of Special Appeals, in an unreported opinion, affirmed the lower court's decision regarding both issues. The court held that the amendment of the statutory reference to the indictment was only a change of form, not substance, and that the jury instruction given, as a whole, was not coercive and did not encourage any jurors to relinquish their beliefs solely to reach a verdict.

Thompson filed a Petition for Writ of Certiorari, which we granted, *Thompson v. State*, 368 Md. 526, 796 A.2d 695 (2002), to address two separate issues:

A.  Did the trial court err in failing to give the Maryland Criminal Pattern Jury Instruction regarding the jury's duty to deliberate, and giving its own modified version of the instruction instead?

B.  Does an amendment to a charging document, which changes the statute under which a defendant has been charged from Article 27, Section 287A to Article 27, Section 287(d)(2), thereby increasing the maximum penalty the defendant may face, constitute a "change in the character of the offense charged"?

## II.  Discussion

### A.  Jury Instruction.

The first issue posed by our grant of certiorari is whether the trial judge erred in instructing the jury with what he called the "attitude of jurors" instruction rather than the

---

**3.** The State submitted a written request that the court use MPJI–Cr 2:01 to instruct the jury.

"duty to deliberate" Maryland Pattern Jury Instruction 2:01. We answer that question in the affirmative.

Rule 4–325 of the Maryland Rules defines the timing of jury instructions and the content of those instructions. The Rule states that, "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." Maryland Rule 4–325(c) (2000). As we have often stated, the purpose of instructing a jury is "to aid the jury in clearly understanding the case, to provide guidance for the jury's deliberations, and to help the jury arrive at a correct verdict." *Chambers v. State*, 337 Md. 44, 48, 650 A.2d 727, 729 (1994); *General v. State*, 367 Md. 475, 485, 789 A.2d 102, 108 (2002). An important aspect of this guidance is providing a description of the process by which the jury is supposed to deliberate. *See, Kelly v. State*, 270 Md. 139, 142, 310 A.2d 538, 540–41 (1973).

In the present case, the trial judge instructed the jury on the process of deliberation as follows:

The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance. It is rarely productive or good for a juror upon entering the jury room to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict.

Your verdict should only be arrived at after careful and thoughtful deliberation. And it may be helpful to listen to consult with each other and to discuss the evidence and the deductions to be drawn therefrom freely and fairly in a sincere effort to arrive at a just verdict. This, however, does not mean that any juror is required to yield an honest conviction after such consultation or deliberation.

Remember that you are not partisans or advocates but rather jurors. The final test of the quality of your service will lie in the verdict which you return to the Court, not in the opinions any of you may hold as you retire.

Have in mind that you will make a definite contribution to efficient judicial administration if you arrive at a just and

proper verdict in this case. To this end, the Court reminds you that in your deliberations in the jury room there can be no triumph except in the ascertainment and declaration of the truth.

Your verdict must represent the considered judgment of each juror and must be unanimous. In other words, all 12 of you must agree.

Thompson asserts that the process of deliberation should have been described as that given in the Maryland Criminal Pattern Jury Instruction (MPJI–Cr) 2:01 as he requested during trial. MPJI–Cr 2:01, entitled "Jury's Duty to Deliberate," is as follows:

The verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. Your verdict must be unanimous.

You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations, do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinions of your fellow jurors for the mere purpose of reaching a verdict.

Maryland Criminal Pattern Jury Instruction (MPJI–Cr) 2:01.

We first addressed the appropriate language to be used in a criminal case to instruct a jury on its duty to deliberate prior to its adjournment to consider the fate of a defendant in *Kelly*, 270 Md. at 140, 310 A.2d at 539–40. In that case, we were asked to reverse a conviction for manslaughter and remand for a new trial because the following language was used by the trial court in the instruction given to the jury before it retired:

May I say to you when you retire to consider this case it may well be that there will be a difference of opinion between you. If that is so, that is not something to be

concerned about because obviously when there are three days of testimony it's not unlikely that there may be some difference. What I ask you to do is for each of you to consult with each other, to consider the testimony as it has been given. In those instances where you cannot conscientiously agree with the majority, then you should maintain your own position. On the other hand you should not out of stubbornness refuse to alter your position, whether it is for innocence or guilt merely because you are not willing to listen to the arguments of the other jurors. There must be some give and take between you. There must be some understanding between you and it is up to you to determine for yourselves whether or not you can conscientiously agree as to what the verdict should be in this case. It makes no difference whether you originally start out in the minority or majority. In every case you are the final arbiters of your own conscience and you must decide whether or not you can agree to reach a verdict in this case.

*Id.* at 144–45, 310 A.2d at 542.

In affirming the conviction, we announced our adoption of the American Bar Association Criminal Justice Standards, Standard 5.4, *Standards Relating to Trial by Jury,* Approved Draft, 1968, American Bar Association, 1968 ("ABA *Standards* ") as the criteria to be used in measuring the appropriateness of "duty to deliberate" jury instructions. The text of the ABA *Standards* was:[4]

Length of deliberations; deadlocked jury.

(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury: (i) that in order to return a verdict, each juror must agree thereto; (ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be

---

4. The ABA *Standards* is now in its third edition, Standard 15–5.4 ABA Standards for Criminal Justice: Discovery and Trial by Jury, Third Edition, American Bar Association, 1996. The current form reflects some stylistic changes and a change in the numbering used, but, otherwise, there is no change in substance.

done without violence to individual judgment; (iii) that each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors; (iv) that in the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and (v) that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

(b) If it appears to the court that the jury has been unable to agree, the court may require the jury to continue their deliberations and may give or repeat an instruction as provided in subsection (a). The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals.

(c) The jury may be discharged without having agreed upon a verdict if it appears that there is no reasonable probability of agreement.

Standard 5.4, *Standards Relating to Trial by Jury*, Approved Draft, 1968, American Bar Association, 1968. In *Kelly*, we determined that the jury instructions given by the trial court comported with these ABA *Standards* and held, therefore, that a reversal of the underlying conviction was not warranted. *Kelly*, 270 Md. at 140–45, 310 A.2d at 540–42.

The guidance we provided in *Kelly*, however, went beyond our examination of the specific jury instructions utilized in the underlying case. In addition to adopting the ABA *Standards,* we also gave approval to a specific instruction that, we held, was always proper to use before a jury begins to deliberate. That instruction states:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous. It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an

impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. [In criminal cases substitute the following: Since this is a criminal case, you are judges—judges of both the law and the facts.] Your sole interest is to ascertain the truth from the evidence in the case.

*Id.* at 143–44, 310 A.2d at 541 (quoting Instruction 8.11 of *Jury Instructions and Forms for Federal Criminal Cases,* 27 F.R.D. 39, 97–98 (D.C.1961)). We referred to this instruction as an *"Allen-*type" [5]instruction because of its modified language and recognized that judges may "personalize" jury instructions, especially prior to the beginning of deliberations as long as they "reasonably adhere[ ] to the [ABA] Standards." *Id.* at 144, 310 A.2d at 542.

In *Burnette v. State,* 280 Md. 88, 371 A.2d 663 (1977), we were asked to consider whether an *Allen* charge should be given when the jury is deadlocked. In response, we disavowed its use because we determined that the language was coercive and, as such, an impermissible interference with the province of the jury. *Id.* at 100, 371 A.2d at 669. Subsequently, in *Goodmuth v. State,* 302 Md. 613, 490 A.2d 682 (1985), we noted that the guidance given in *Burnette* was applicable to pre-deliberation instructions as well as to those given to deadlocked juries. *Id.* at 622, 490 A.2d at 686.

---

**5.** *"Allen* charge" is derived from an instruction sanctioned by the Supreme Court and given to a deadlocked jury. *Allen v. United States* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). Such a charge encourages jurors to reach a verdict by stressing deference of the minority jurors to the views of the majority. We used the term *"Allen-*type charge"* to distinguish jury instructions that utilized language modifications to the specific instruction given in *Allen v. United States. Kelly,* 270 Md. at 140 n. 1, 310 A.2d. at 539 n. 1.

In *Burnette* we objected to language suggesting that the minority members of a jury should be deferential to the views of the majority. *Burnette,* 280 Md. at 100, 371 A.2d at 669. Specifically, we considered whether the following language offended the ABA *Standards:* "[i]f your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct." *Id.* We also voiced concern over language used in *Burnette* in which one part of a sentence instructed jurors to reach a verdict based on their own convictions, while the next part of the same sentence told jurors to give "proper regard and deference to the opinions of others." *Id.* at 100, 371 A.2d. at 669. The instruction, according to our analysis, gave only "passing attention to the important principle that honest judgment, and not mere acquiescence, should be at [the] basis of a juror's decision". *Id.* We stated also that "the instruction might tend to unduly strengthen the majority's convictions, perhaps making the majority less willing to seriously engage in further deliberations." *Id.* As such, we found that the instruction in *Burnette* was essentially a traditional *Allen* charge; it was not a personalized version of our recommended instruction nor did it "closely adhere" to the ABA *Standards. Id.* at 99–100, 371 A.2d at 668. We emphasized that, "deviations in substance will not meet with our approval." *Id.* at 101, 371 A.2d at 669.

In *Goodmuth,* we explored whether traditional *Allen* language could be appropriately used to instruct a jury prior to deliberation. 302 Md. at 614, 490 A.2d. at 682. We emphasized that the analysis in *Burnette* was not limited to instructions given to deadlocked juries but also to jurors prior to the beginning of deliberations. *Id.* at 622, 490 A.2d at 686. We found that *Allen* instructions given before deliberations are just as coercive and "may well impact upon the minority." *Id.* at 622–23, 490 A.2d at 687.

The ABA *Standards* for "duty to deliberate" jury instructions approved in *Kelly,* and affirmed in *Burnette* and *Goodmuth,* have been incorporated into the "Duty to Deliberate" Maryland Criminal Pattern Jury Instruction 2:01 as we noted

in *Graham v. State,* 325 Md. 398, 409 n. 4, 601 A.2d 131, 136 n. 4 (1992).[6] We explicitly expressed approval of MPJI–Cr–2:01, which we noted "closely follows the language of Standard 15–4.4 (formerly Standard 5.4) of the Standards for Criminal Justice (1978, 1986 Supp.)." [7]  *Id.*

Although some portions of the jury instruction given by the trial judge in the present case in what he called the "attitude of the jurors" instruction give some deference to the ABA *Standards* and reflect some of the nuances of the Maryland Pattern Jury Instruction 2:01, there are substantial deviations between the instruction given in this case and the ABA *Standards,* as well as MPJI–CR 2:01.  Specifically, the following portions of the instruction given by the trial court do not meet the criteria of the ABA *Standards:*

> The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance.  It is rarely productive or good for a juror upon entering the jury room to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict.

> Remember that you are not partisans or advocates but rather jurors.  The final test of the quality of your service will lie in the verdict which you return to the Court, not in the opinions any of you may hold as you retire.

> Have in mind that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case.  To this end, the Court reminds you that in your deliberations in the jury room there can be no triumph except in the ascertainment and declaration of the truth.

---

**6.**  In *Graham* we used the language of "modified *Allen* charge." *Graham,* 325 Md. at 409, 601 A.2d. at 136.

**7.**  *See supra* note 4 explaining that the ABA *Standards* have undergone stylistic and numeric changes since their inception in 1968.  The reference in *Graham* is to the then-current edition of the ABA *Standards.*

The language of this instruction does not "reasonably adhere to" the ABA *Standards*. This is especially true of the language that suggests "the final test of the quality of your service will lie in the verdict which you return to the Court, not in the opinions any of you may hold as you retire." This concept of a "final test" implies that there is a standard of service to which a juror should aspire, one that requires a verdict to be reached rather than one that requires consideration of individual conviction and whether individual conviction thoughtfully can be reconciled with collective judgment. Because a verdict cannot be reached without unanimity, the "final test" language logically implies that a "good" juror acquiesces in a verdict rather than adheres to his or her own judgment. Such language is a deviation in substance from MPJI–Cr 2:01 and the ABA *Standards*, which recognize that jurors should not surrender honest convictions in order to return a verdict.

The State points to other jurisdictions such as North Carolina, Idaho, and California that have made use of the language of a "final test" in which the "quality of service will lie in the verdict you return." *State v. Bryant*, 282 N.C. 92, 99–100, 191 S.E.2d 745, 750–51 (1972) cert. denied, 410 U.S. 958, 93 S.Ct. 1432, 35 L.Ed.2d 691 (1973); *State v. Tope*, 86 Idaho 462, 468, 387 P.2d 888, 892 (1963); *People v. Moraga*, 244 Cal.App.2d 565, 53 Cal.Rptr. 563 (1966). At the time of those decisions, however, these jurisdictions had not adopted the ABA *Standards* as we have done to provide guidance concerning appropriate language for "duty to deliberate" jury instructions.[8] As such, those cases are inapposite to the present case.

---

8.  Since the time of these decisions, North Carolina and California have changed their "duty to deliberate" instructions. The North Carolina General Assembly enacted a statute, G.S.15A–1235, based on the ABA *Standards*, effective July 1, 1978, to provide guidelines for "duty to deliberate" jury instructions. *See State v. Alston*, 294 N.C. 577, 597, 243 S.E.2d 354, 367 (1978). California has adopted standards for "duty to deliberate" jury instruction in *People v. Gainer*, 19 Cal.3d 835, 852, 139 Cal.Rptr. 861, 566 P.2d 997, 1006 (1977) declaring a rule of criminal procedure that it is error "to give an instruction which either

The Court of Special Appeals found that the instruction given by the trial judge comported with MPJI–Cr 2:01. We differ from that court because we find the "final test" language used in the duty to deliberate instruction to be a deviation in substance from the pattern jury instruction and the ABA *Standards*. Such language is suggestive of the primacy of collective judgment over individual principle and honest conviction. We, therefore, reverse the judgment of the Court of Special Appeals with instructions to reverse the judgment of conviction and remand for a new trial.

## B.  Amendment to the Indictment.

Although this case will be remanded for a new trial, the issue of the amendment to the Indictment must be addressed because of its potential double jeopardy implication regarding the affected count were we to find petitioner's argument had merit. We, therefore, shall address the second issue raised, that of whether a mid-trial amendment to the Indictment changing the statutory reference was properly received.

Maryland Rule 4–204 permits an amendment to a charging document under certain circumstances. Rule 4–204 provides that: "[o]n motion of a party or on its own initiative, the court at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offense charged, the consent of the parties is required." Md. Rule 4–204 (2000).[9]  Thompson did not con-

---

(1) encourages jurors to consider the numerical division or preponderance of opinion on the jury . . .; or (2) states or implies that if the jury fails to agree the case will necessarily be retried."

The language of a "final test" used in *State v. Tope*, 86 Idaho 462, 468, 387 P.2d 888, 892 (1963), was part of a charge given to a deadlocked jury and such *Allen* charges were disavowed in *State v. Flint*, 114 Idaho 806, 812, 761 P.2d 1158, 1164 (1988).

9.  Rule 4–204 is derived from Maryland Code, Art. 52, Section 22 (1957), which allowed the amendment of a criminal information "provided, however, that such amendment [did] not change the character of the offense or crime with which the accused [was] charged." There were additional modifications in the intervening years involving *"form v. substance"* language and "character of the offense" language as well

sent to the amendment. Rather, he objected based on his assertion that the amendment specifically changed the penalty from a flat fine to one with a possibility of one-year incarceration. We, therefore, must determine whether the amendment of the Second Count during trial "changed the character of that offense."

Initially, the Second Count of the Indictment stated, in pertinent part, the following:

**COUNT TWO:** *Possession of Controlled Paraphernalia*

... that **TERRY HUGH THOMPSON,** on or about April 27, 2000, in Montgomery County, Maryland unlawfully did possess controlled paraphernalia in sufficient quantity to and under circumstances which reasonably indicate an intention to use such items for the illegal distribution and dispensing of a controlled dangerous substance, to wit: a digital scale, glassine baggies, Philly blunt cigars, rolling papers, and a wooden pipe, in violation of Article 27, Section 287A of the Annotated Code of Maryland.... (Possession of Controlled Paraphernalia, Article 27, Section 287A)

On the final day of trial, the State moved to amend this count by substituting the statutory citations. The State sought to change the citation from Article 27, Section 287A to Article 27, Section 287(d)(2). Section 287A bears a possible maximum fine of $500.00 while the possible penalty for a violation of Section 287(d)(2) is a one-year prison term.

▆▆▆▆ As we have stated, the purpose of an indictment is to provide notice to the accused of the charge against him and to guard against the possibility of unfair surprise during trial.[10]

---

as numbering changes. Finally, in 1984, Rule 4–204 was issued in its present form. Consequently, depending upon the language of the Rule in effect at the time, this Court has conducted either a "character of the offense" analysis or a "matter of substance" analysis to determine if amendments not otherwise consented to have been permissible. *Johnson v. State,* 358 Md. 384, 387–88 & n. 1, 749 A.2d 769, 770–71 & n. 1 (2000).

**10.** A defendant must have adequate notice of the character of the offense charged against him because "every man hath a right to be

*Johnson,* 358 Md. at 392, 749 A.2d at 773. Adequate notice is given when a charging document contains both a characterization of the crime and the particular act alleged to have been committed. *Ayre v. State,* 291 Md. 155, 163, 433 A.2d 1150, 1155 (1981). Our guidance in *Ayre* is based on former Maryland Rule 711 a, now Rule 4–202(a),[11] requiring a charging document to contain a "definite statement of the essential facts of the offense with which the defendant is charged."

With respect to the role of the statutory citation in this scheme, we note that Maryland Rule 4–202(a) also states that, "[t]he statute or other authority for each count shall be cited at the end of the count, but error in or omission of the citation of authority is not grounds for dismissal of the charging document or for reversal of a conviction." In *Ayre* we iterated that "[the statutory] reference exists as a matter of convenience to the parties and the court, and thus possesses no substance of its own."[12] *Ayre,* at 168 n. 9, 433 A.2d at 1158 n. 9. The "character of the offense" is determined by what is stated in the body of an indictment, not the statutory reference or caption.[13] *Busch v. State,* 289 Md. 669, 678, 426 A.2d 954, 959 (1981).

---

informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence." MD. CONST. Decl. of Rights, Art. 21. "In all criminal prosecutions, the accused shall enjoy the right to ... be informed of the nature and cause of the accusation...." U.S. CONST. amend. VI.

11.  Maryland Rule 4–202(a) is derived from former Rule 711 a and former M.D.R. 711(a). Rule 4–202, approved by this Court in 1984, modified previously used language regarding the criteria for a sufficient charging document henceforth requiring that an indictment be stated with "reasonable particularity."

12.  *See also Laque v. State,* 207 Md. 242, 249, 113 A.2d 893, 895–96 (1955) (discussing a warrant that incorrectly cited a section of a zoning ordinance; the warrant was found to be sufficient because the incorrect citation did not otherwise mislead the accused and an amendment to the warrant of a substitution for the correct section reference could have been made at any time before the final judgment.)

13.  In *Busch v. State,* 289 Md. 669, 678, 426 A.2d 954, 959 (1981), we found that the caption listed as "Resisting Arrest" above a charging

The "character of the offense charged" is really the gravamen of Thompson's challenge, so we proceed to explore the language of the Second Count as compared to Sections 287A and 287(d)(2). Below is the language of these three texts at issue-the initial Indictment, Article 27, Section 287A and Article 27, Section 287:[14]

| Initial Indictment— Count 2 | Language of Article 27, § 287A | Language of Article 27, § 287(d)(2) |
|---|---|---|
| *Possession of Controlled Paraphernalia* | 287A Drug Paraphernalia | Unlawful possession or distribution of controlled paraphernalia . . . |
| ... TERRY HUGH THOMPSON, on or about April 27, 2000, in Montgomery County, Maryland, unlawfully did possess controlled paraphernalia in sufficient quantity to and under circumstances which reasonably indicate an intention to use such items for the illegal distribution and dispensing of a controlled dangerous substance, to wit: a digital scale, glassine baggies, Philly blunt cigars, rolling papers, and a wooden | (a) Definition—As used in this section, the term "drugparaphernalia" means all equipment, products, and materials of any kind which are used, intended for use, ... in ... introducing into the human body a controlled dangerous substance.... It includes but is not limited to: (5) scales ... (9) capsules, balloons, envelopes and other containers used, intended for use, or designed for use in packaging | (d) To possess or distribute controlled paraphernalia, which shall mean: (2) Gelatin capsules, glassine envelopes or any other container suitable for the packaging of individual quantities of controlled dangerous substances in sufficient quantity to and under circumstances which reasonably indicate an intention to use any such item for the illegal manufacture, distribution, or dispensing of any |

document did not serve to characterize the offense when the body of the document contained the alleged act of the accused as "resist[ing] and hinder[ing] a police officer in the lawful execution of his duties." *See also State v. Carter,* 200 Md. 255, 262, 89 A.2d 586, 589 (1952).

**14.** Maryland Code, Art. 27, Sections 287, 287A (1957, 1996 Repl.Vol.) were repealed effective October 1, 2002. Article 27, Section 287 was superseded by Maryland Code Section 5–620 of the Criminal Law Article (2002). Article 27, Section 287A was superseded by Maryland Code, Section 5–619 of the Criminal Law Article (2002) with the exception of Section 287A (a) which was superseded by Section 5–101(*o*). All became effective October 1, 2002.

pipe, in violation of Article 27, Section 287A of the Annotated Code of Maryland, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.

small quantities of controlled dangerous substances; (10) Containers and other objects used ... in storing or concealing controlled dangerous substances; (11) Hypodermic syringes, needles and other objects used ... in parenterally injecting controlled dangerous substances into the human body; (12) Objects used, intended for use ... in introducing marijuana ... into the human body, such as: (i) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes ...
(c) Use of possession with intent to use.—It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled dangerous substance....

such controlled dangerous substance. Evidence of such circumstances shall include but not be limited to close proximity to any such controlled paraphernalia to any adulterants or equipment commonly used in the illegal manufacture and distribution of controlled dangerous substances, such as but not limited to any of the following: scales, sieves, strainers, measuring spoons, staples and staplers, or procaine hydrochloride, mannitol, lactose, quinine, or any controlled dangerous substance....

The language of the Indictment reflects the language of Section 287(d)(2) at first glance. A more studied exploration supports this conclusion. The Second Count utilizes exact phrases from Section 287(d)(2) to indicate a charge against

Thompson for possession of paraphernalia with the intent to distribute marijuana. The term "controlled paraphernalia" is used throughout the charging document. This terminology is included and defined exclusively in Section 287(d)(2) above. The following boldfaced language within the unamended Indictment indicates phraseology that is taken directly from the text of Section 287(d)(2):

### *Possession of Controlled Paraphernalia*

... TERRY HUGH THOMPSON, on or about April 27, 2000, in Montgomery County, Maryland, unlawfully did **possess controlled paraphernalia in sufficient quantity to and under circumstances which reasonably indicate an intention to use such items for the illegal distribution and dispensing of a controlled dangerous substance,** to wit: a digital **scale, glassine** baggies, Philly blunt cigars, rolling papers, and a wooden pipe, in violation of Article 27, Section 287A of the Annotated Code of Maryland, contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State. (**Possession of Controlled Paraphernalia,** Article 27, Section 287A)

In addition, Section 287(d)(2)'s category of "glassine envelopes or any other container suitable for the packaging of individual quantities of controlled dangerous substances for the illegal ... distribution" could include items listed on the Indictment—Philly Blunt cigars, rolling papers, and glassine baggies.

The next focus of our analysis must be whether the body of the Second Count was sufficient to charge any crime, because in *Gray v. State,* 216 Md. 410, 416, 140 A.2d 643, 646 (1958), we found that an insufficiency in the language of a charge could give rise to a circumstance in which a statutory reference supplied a necessary element of the characterization of an offense charged. There, we found that a caption, ordinarily amendable without altering the character of an offense, became a necessary part of the charging document because it

served to clarify an otherwise insufficiently described charge.[15]
*Id.* In the present case, however, we find that the Indictment
is sufficient without the statutory citation in that it provides
notice to Thompson that he is being charged with possession
of controlled paraphernalia with intent to distribute in viola-
tion of Section 287(d)(2).

Thompson also argues that the language of the Indictment
is a combination of the wording of both Section 287A and
Section 287(d)(2), and, thus, the statutory reference is a
necessary indicator of which section is charged. An examina-
tion of both Sections 287A and 287(d)(2) shows that possession
of the paraphernalia listed in the Second Count, specifically
the scale, glassine baggies, Philly Blunt cigars, and rolling
papers, conceivably could fit either section.[16] This commonali-
ty, however, does not create any ambiguity regarding which
statute had been charged.[17] It is the intent with which one

---

**15.** In *Gray*, the caption, "Concealed Weapon," headed a warrant that
did not use the statutory language of the basic description of the
offense, i.e., the carrying of a weapon "openly with the intent and
purpose of injury to any person in any unlawful manner," but rather,
specified how the accused carried the weapons i.e., "concealed upon
and about his person." *Gray*, 216 Md. at 416, 140 A.2d at 646.
Because we found that the initial warrant as a whole, including the
caption, adequately notified the accused of the charge against him,
though in nontechnical terms, the amendment to that warrant did not
change the character of the offense charged. *Id.*

**16.** Our decision in *Campbell v. State*, 325 Md. 488, 601 A.2d 667 (1992),
holds that pipes adapted for administering controlled dangerous sub-
stances under circumstances which indicate an intention to use them
for such purposes are not controlled paraphernalia under Article 27,
Section 287(d). *Id.* at 508–09, 601 A.2d at 677; *see also Kraft v. State*,
18 Md.App. 169, 172, 305 A.2d 489, 491 (1973) (finding that possession
of a pipe of the type used for marijuana smoking does not come under
the umbrella of Article 27, Section 287(d)).

**17.** The distinctions between these two sections is the focus of a 1981
Opinion by the Maryland Attorney General's Office issued in response
to a practitioner's question about whether Section 287A repealed Sec-
tion 287(d)(2). 66 Op. Atty. Gen. Md. 125 (1981). This opinion
highlights the textual differences in these two sections. In addition, the
legislative history shows that Section 287 first became part of Mary-
land's criminal statutes in 1935 and later was broadened by additions
in 1970 and 1971. Section 287A was enacted as emergency legislation

possesses such paraphernalia that determines which section is charged. The gravamen of Section 287(d)(2) is possession of controlled paraphernalia with the intention of distributing or dispensing. Code, Art. 27, Section 287(d)(2). The caption used for Section 287(d), *distribution of controlled paraphernalia,* reinforces this statute's clear purpose.

In contrast, the gravamen of Section 287A is specifically that of possessing a drug paraphernalia with the intention to use it in ingesting, inhaling or otherwise introducing a controlled dangerous substance into the human body. Code, Art. 27, Section 287A. The possession *for personal use* is clearly indicated by the statute's language.

In the Second Count of the Indictment, the language of the alleged act and character of the charge is extrapolated directly from Section 287(d)(2)—"possess controlled paraphernalia in sufficient quantity to and under circumstances which reasonably indicate an intention to use such items for the illegal distribution and dispensing of a controlled dangerous substance." Therefore, the "character of the offense charged" was clearly that of Section 287(d)(2).

This situation differs from that in *Johnson,* in which the State sought to substitute the word "cocaine" for the word "marijuana" in a charging document. *Johnson,* 358 Md. at 387, 749 A.2d at 770. Such an amendment would have altered what the basic offense was and triggered a more severe penalty for a charge involving cocaine rather than marijuana.[18]

---

in 1980 in an apparent attempt to stem the tide of a fairly new phenomenon in many communities—the open display, marketing, and sale of drug paraphernalia to the public for personal use. There is nothing in the legislative history to indicate any intention that the addition to Maryland's drug statutes of Section 287A was meant as a replacement for any preexisting statutes such as Section 287(d)(2). Section 287A does not expressly nor impliedly repeal Section 287(d)(2).

18. In *Johnson,* the court acknowledged the relevant differences in the two charges at issues in that case. *Johnson,* 358 Md. at 391, 749 A.2d. at 772–73. A violation involving marijuana under Article 27, Sections 286(a)(1) and 287(a) has a maximum penalty of five years imprisonment and a $15,000.00 fine compared with a maximum penalty of

*Id.* at 391, 749 A.2d. at 772–73. In this case, the amendment of the statutory citation does not alter the character of the offense; the Indictment sufficiently charges a violation of Section 287(d)(2). It is not the statutory reference that triggers the possible penalty but, rather, the character of the offense alleged. Therefore, no prejudicial error occurred in the trial court's allowance of the amendment at the first trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL CONSISTENT WITH THIS OPINION; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.*

Chief Judge BELL and Judge CATHELL concur in the result and in Part II.A of the opinion.

---

twenty years incarceration and a $25,000.00 fine for a violation involving a narcotic such as cocaine. *Id.* In addition, the enhanced penalties for second offenders do not apply for marijuana convictions but apply for previous cocaine convictions. *Id.* Under Section 287, the penalty for marijuana violation is a maximum of one year incarceration and/or a $1,000.00 fine compared with a possibility of four years imprisonment and/or a $25,000.00 fine for cocaine. *Id.*