962 A.2d 383

Ayinde DeLEON

v.

STATE of Maryland.

No. 17, Sept. Term, 2008.

Court of Appeals of Maryland.

Dec. 23, 2008.

18

Robert J. Tully (Stephen R. Tully, Seigel, Tully & Furrer, Baltimore) on brief, for Appellant.

Douglas F. Gansler, Atty. Gen. (Diane E. Keller, Asst. Atty. Gen., Baltimore) on brief, for Appellee.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, Judge.

Ayinde DeLeon appeals his conviction of first-degree assault and conspiracy to commit first degree murder of a fellow prisoner in the Maryland Department of Corrections ("DOC"). DeLeon contends that his trial was prejudiced by the admission of evidence that he was associated with the "Bloods" gang. He asserts that "[e]vidence of gang membership and activity was not relevant to the facts of [DeLeon]'s case, was highly prejudicial, and was admitted without sufficient factual basis or nexus to the crimes as alleged." This prejudice, he argues, arises from the risk that jury members will be influenced to convict him because gangs invoke images of violent criminal activity. We agree with the State's contention that

DeLeon failed to argue relevance or prejudice at trial about the evidence he now challenges and, accordingly, we will not consider those issues. DeLeon's remaining arguments for disallowing gang evidence are limited in scope, and do not reveal trial court error.

## FACTS AND LEGAL PROCEEDINGS

This case arises from a violent prison brawl that broke out at the Jessup Pre–Release Unit ("JPRU") of the Maryland DOC on June 30, 2006. The animosities giving rise to this altercation began a few months earlier at the Brockbridge Correctional Facility where Yusef Payne and victim Troy Fennel were both serving prison terms. Fennel testified that a dispute over a pair of tennis shoes led Payne to stab him in the head and assault him with a chair in the winter of 2006.

This incident prompted Fennel's transfer to the Central Laundry prison facility. On June 30, 2006, Central Laundry inmate and alleged "Bloods" gang member Maurice Brown threatened Fennel because he "told on one of [Brown's] friends." This resulted in Fennel's same-day transfer to the JPRU where, in a stroke of ill luck, Payne was also incarcerated. Within ten minutes after Fennel arrived at his dormitory, petitioner Ayinde DeLeon approached him, asked why he "told on" his friends, and punched him in the face. Also present was Payne, who attempted to stab Fennel before he ran away in search of help.

Fennel was unable to find someone to come to his aid and less than 45 minutes later, he was approached in his dormitory by yet another knife-brandishing inmate, Clister King. Fennel retreated from King and was then assaulted by DeLeon and Payne as he attempted to jump over the wall to safety. DeLeon stabbed Fennel in the back of his head and all three inmates worked in tandem, stabbing him all over his body. Payne stabbed Fennel in the eye, told the other two to get out of the way, and repeated the words "kill him, kill him, kill him." Correctional Officer Qwan Finch heard someone calling from Fennel's dorm, entered, and saw two individuals assault-

ing Fennel. Officer E. Davis came to Fennel's aid and DeLeon, who had run away, was soon placed in handcuffs.

DeLeon was charged with attempted first-degree murder, first-degree assault, second-degree assault, reckless endangerment, and conspiracy to commit first degree murder. His trial commenced November 20, 2007 in the Circuit Court for Anne Arundel County. The State's trial theme was that the close organizational ties between DeLeon, King, and Payne served as the motive for a revenge killing. The jury heard testimony that identified DeLeon, King, and Payne as prison comrades who frequently donned red clothing and accouterments, a color associated with the "Bloods" gang. Responding Officer E. Davis testified that when she discovered Fennel in a pool of blood, Fennel said that the "Bloods did it to me. DeLeon, Payne, and King."

After a four-day trial, the jury delivered a verdict of guilty of first-degree assault and conspiracy to commit first degree murder.[1] DeLeon timely appealed his conviction to the Court of Special Appeals. We granted certiorari on our own initiative before the intermediate appellate court decided the appeal to consider the following question: "Did the lower court err in allowing the admission of evidence of gang membership, association, and activity against [DeLeon]?"

## DISCUSSION

### *Standard Of Review*

The determination of whether evidence is relevant is a matter of law, to be reviewed *de novo* by an appellate court. *See J.L. Matthews, Inc. v. Md.-Nat'l Capital Park & Planning*, 368 Md. 71, 92, 792 A.2d 288, 300 (2002)("[W]hen the trial judge's ruling [on the admissibility of evidence] involves a

---

1. The jury was unable to reach a unanimous verdict as to the first two counts (attempted first and second-degree murder). The State agreed to not pursue those charges further, as they were satisfied with guilty verdicts as to other counts. No verdict was reached as to the second-degree assault count, as it was merged with the verdict for first-degree assault.

legal question, we review the trial court's ruling *de novo*."). When evidence is relevant, this Court grants wide latitude to trial judges' decisions on its admissibility. *See Merzbacher v. State*, 346 Md. 391, 404–05, 697 A.2d 432, 439 (1997)("Once a finding of relevancy has been made, we are generally loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion."). A ruling reviewed under an abuse of discretion standard will not be reversed simply because the appellate court would not have made the same ruling. *Evans v. State*, 396 Md. 256, 277, 914 A.2d 25, 37 (2006), *cert. denied*, —— U.S. ——, 128 S.Ct. 65, 169 L.Ed.2d 53 (2007). To constitute an abuse of discretion, the decision "has to be well removed from any center mark imagined by the reviewing court and beyond the fringe of what that court deems minimally acceptable." *Id.* (citation and internal quotation marks omitted).

## I.

## Preservation Of DeLeon's Relevancy And Prejudice Challenges

█ "[A]n appellate court ordinarily will not consider any point or question 'unless it plainly appears by the record to have been raised in or decided by the trial court.'" *Robinson v. State*, 404 Md. 208, 216, 946 A.2d 456, 461 (2008) (citations omitted). In *Fitzgerald v. State*, we explained that the primary purpose of the rule is two-fold:

> (a) to require counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings, and (b) to prevent the trial of cases in a piecemeal fashion, thus accelerating the termination of litigation.

384 Md. 484, 505, 864 A.2d 1006, 1018 (2004) (citations and internal quotation marks omitted). In discussing the preservation issue, we shall address each of the contested pieces of

gang-related evidence presented at trial and examine the objections made by DeLeon.

### *The Bloods Did It To Me*

■ The first piece of gang evidence was offered when the State asked Prison Officer E. Davis about what the victim told her when she found him. DeLeon immediately offered the following objections:

[Defense Counsel]: What the State is trying to get at is I guess an excited utterance with reference to this. I have a couple of objections. One, the victim is going to be testifying—testify [sic] what he said or didn't say at that point.

Secondly, there is some reference to gangs which—carefully. —tip-toe around to it. And I don't know if he is going to be saying something about the Bloods did this to me, which has been provided—I would be objecting to his reference to that. And thirdly, I don't think you can set a foundation for excited utterance by other hearsay.

This objection led to a colloquy in which defense counsel furnished additional grounds for his objection [2] and the prosecutor defended her line of questioning:

·· [Prosecutor]: Well that is not true. An excited utterance shows that the person doesn't have time to reflect, that they are saying things in the throes of the emotional environment.

He is upset. He thinks he is dying. He is asking for help.... [I]t's something that the courts have found is reliable because a person doesn't have time to sit back and make something up.

Also he is going to tell who has assaulted him. And the gang evidence in the case that I have [*Ayala v. State*, 174 Md.App. 647, 923 A.2d 952, *cert. denied*, 401 Md. 173, 931 A.2d 1095 (2007) ] says that gang evidence is admissible, not

---

**2.** As we discuss in the next section, the basis for DeLeon's objection is far from clear.

to show that someone is a bad person, but to show motive for the crime.

The reason why an otherwise unthinkable crime has occurred is because the gang evidence says you can use it to show why people are acting together. Why they were acting to attack somebody. In this case we are saying between four to five people attacked this man simply because they were a member of a gang.

\* \* \*

[Defense Counsel]: If you are going to get into gangs you have to show in that case a basis of knowledge. You can't just say that it is a gang, you have to say why he would know that it is a gang. That is why it would be—through her.

It may be that they can set the foundation through the victim as to how he knows Mr. DeLeon. But to get to bring it in through her, then you avoid the basis of that case and that decision.

[Prosecutor]: But the reason I am bringing in what he says is not to prove that this person is a member of a gang. I haven't gotten there yet. I am bringing in the excited utterance that the victim was saying.

\* \* \*

[Court]: .... It could be an excited utterance. —certainly to have been stabbed multiple times—I mean how much more excited can you get.

[Defense Counsel]: Well I think once they lay that foundation that probably is an excited utterance. What she was laying a foundation was saying what did he say. And you can't say what did he say to clear the excited utterance about something like that. You can't use the hearsay to create the exception to the hearsay.

**24**

\* \* \*

Now secondly, it is the gang point that I object to because that is the reliability and basis of knowledge. We have no understanding—we have no basis of why he is saying it's the Bloods.

I think she probably could—if he tells her who the people are when she sets the foundation of the excited utterance.

\* \* \*

[Court]: I don't think it is necessarily being offered for the purpose of even showing that the Bloods are a gang. It is an identification issue.

[Defense Counsel]: I will raise the objection without interrupting[.] [3]

The State then offered testimony to support its contention that Fennel made a spontaneous excited utterance:

[Prosecutor]: Was he calm as he said this?

[Davis]: No, he was like yelling at us. Help, help, help, I'm in pain, I'm in pain. My eye, my eye. Help, help, somebody help.

Officer Davis's most damning testimony followed:

[Prosecutor]: What did he say to you?

[Defense Counsel]: Objection for reasons at the Bench.

[Court]: Overruled.

[Davis]: **He said I'm going to tell you all who did it because if I die, I want you all to know who did this to me. And he was like the Bloods did it to me. DeLeon, Payne and King.** (Emphasis added.)

██ The parties disagree about the nature of DeLeon's objection expressed during this colloquy. Under Maryland Rule 4–323(a), "The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs." Thus, a party basing an appeal on a

---

**3.** DeLeon characterizes this in his brief as a continuing objection, but the court recognized it as such.

"general" objection to admission of certain evidence, may argue *any* ground against its inadmissibility. *Boyd v. State,* 399 Md. 457, 475–76, 924 A.2d 1112, 1122–23 (2007). DeLeon contends that his objection to Officer Davis' testimony qualifies as a "general" one, and thus preserves his appellate arguments that the gang membership evidence was not relevant, and was highly prejudicial.

■ The flaw in DeLeon's theory is revealed by examination of his trial objections, which went too far to be a general objection and not far enough to preserve his arguments on appeal. An objection loses its status as a "general" one "where a rule requires the ground to be stated, where the trial court requests that the ground be stated, and *'where the objector, although not requested by the court, voluntarily offers specific reasons for objecting to certain evidence* [.]' " *Id.* at 476, 924 A.2d at 1123 (citations omitted, emphasis added). As demonstrated by the transcript passage above, counsel chose a more forceful approach than merely offering a general objection and instead advanced several reasons to support DeLeon's objection to Davis' recounting of the victim's incriminating declaration. Thus, the objection was not a "general objection" under the rule stated in *Boyd* and, accordingly, DeLeon is limited to the grounds explicitly raised in the trial court.

DeLeon asserts that his relevancy objection *was* raised below; not by him, but by the State, when the prosecutor offered *Ayala v. State,* 174 Md.App. 647, 923 A.2d 952, *cert. denied,* 401 Md. 173, 931 A.2d 1095 (2007) as a case supporting admission. After DeLeon made a foundation objection to the State's question about DeLeon belonging to the Bloods, the prosecutor cited *Ayala* to rebut the objection, saying, "[T]he case I have says that gang evidence is admissible, not to show that someone is a bad person, but to show the motive for the crime."

In *Ayala,* the Court of Special Appeals considered whether testimony of gang involvement was prohibited because it was introduced to show bad character or prior bad acts in violation

of Maryland Rule 5–404(b). The court concluded that evidence of Ayala's gang membership was highly probative as to his motive to kill the victim, who was a member of a rival gang, and was not unduly prejudicial. *Ayala,* 174 Md.App. at 664, 923 A.2d at 962. We do not consider the State's mention of *Ayala* sufficient to preserve DeLeon's appellate objection that the gang evidence was prejudicial and not relevant.

The colloquy between the court and counsel set forth above reveals that the thrust of DeLeon's objection was that the State needed to submit evidence that he was a gang member, before they introduced the victim's statement that "the Bloods did it to me." He even characterized it as a "foundation" objection. He did not argue, as he does here, that *any* gang evidence was prejudicial because it conjured up criminal violence in the jury's mind. The trial court was necessarily focused on the grounds for DeLeon's objection, and not on whether mention of the Bloods was "bad character" evidence or whether the jury would be unduly influenced to convict because they have negative associations with the Bloods or gangs in general. The essence of the preservation rule is that the trial court must have an opportunity to consider the issue, and rule on it first, in the context of the trial. It cannot be expected to do so just because the State cites a case that would support opposition to an objection never made.

Accordingly, DeLeon's arguments in this appeal against admissibility of the victim's incriminating declaration are limited to those stated in the trial court: reliability and basis of knowledge. We turn to these arguments now.

## II.

### Reliability And Basis Of Knowledge Challenge
### To "The Bloods did it to me"

DeLeon argues that there was an insufficient foundation for the question that elicited Officer Davis' statement "the Bloods did it to me." In the words of his brief:

Even if this Court theoretically assumes that gang evidence was relevant to the State's case, the evidence none-

theless lacked a proper foundation or factual basis, and should have been excluded from the jury's consideration. The only evidence produced by the State was lay opinion testimony from various prison guards that the wearing of red indicates "Blood" membership, and that [DeLeon] had been seen wearing red in the past. In *Ayala*, the State's evidence began primarily with the admission by the Defendant that he was a member of MS–13. This admission was corroborated by testimony that police officers had seized photographs of the Defendant showing gang signs, wearing gang colors, and possessing gang tattoos. This evidence was then interpreted by expert testimony from a member of the police department trained and experienced in gang recognition. In the instant case, [DeLeon] denied membership in any gang. **No witnesses were called who could positively identify [DeLeon]** as a gang member. No witness identified any of [DeLeon]'s associates as gang members. The State introduced no evidence of gang tattoos, seized clothing or photographs relating to [DeLeon]. . . . Absent any such factual basis, the trial judge erred in allowing the State to continuously question witnesses and introduce testimony regarding the alleged gang membership of [DeLeon]. (Emphasis added, citations omitted.)

As this argument is somewhat murky, Judge Battaglia sought clarification during oral argument. Defense counsel answered with an evolving explanation of how a better foundation could have been laid:

[Judge Battaglia]: Take us through that. You have the excited utterance that "The Bloods did it to me." What would be the foundation that would have to be laid?

[Defense Counsel]: They would have to go into his basis of knowledge of how he knows this person is a Blood.

[Judge Battaglia]: Okay . . . It's a hearsay situation. [I]t's entered through . . . the corrections officer. What would be the next question that would lay the foundation?

[Defense Counsel]: I think prior to that they would have to establish that this individual is a Blood for it to be

relevant to this individual's case: "The Bloods did this to me." He's charged with the crime. The officer can certainly identify somebody as a member of the Bloods, like they did in *Ayala*, with evidence that he's a member of a gang. The officer can do it. The victim can do it.

[Judge Battaglia]: So ... before the officer would testify then of the excited utterance by the victim, he would have to testify that he knew the defendant was a member of the Bloods ...?

[Defense Counsel]: Or contemporaneous with it. If they're unable to do it subsequent thereto, then it should be stricken out.

[Judge Battaglia]: The officer would have to do that before he could testify about the excited utterance of the victim?

[Defense Counsel]: Well, I think you can allow it subject to later proper foundation. I don't think it has to be that contemporaneous. Maybe the victim testifies later and it comes in through the victim that he is able to say he's a Blood. Maybe they're able to establish the gang through an officer, but there was no establishment whatsoever in this case.

[Judge Battaglia]: So ... they ask about the excited utterance. What happens next? And ... Mr. Fennel says "the Bloods did it to me." What happens next? Is it admitted? ...

[Defense Counsel]: Admitted conditionally. It could be admitted subject to—the proper objections are raised—it could have been admitted subject to proper foundation being laid. Subject to this becoming relevant. If the state says—and they argued *Ayala* right off the bat—this is relevant to motive ... in this case. *Ayala* says we can do it. If the state says that's what we're going to do, then they have to be able to do it. But he didn't—the judge just let it in. He just said "well, you know" he spoke about gangs being secretive, and he just allowed the admission of the evidence.

[Judge Battaglia]: **As an excited utterance.**

[Defense Counsel]: **As an excited utterance, yes.** (Emphasis added.)

We glean from counsel's written and oral arguments that DeLeon seeks to superimpose upon the excited utterance exception a foundational requirement that simply does not exist. Maryland Rule 5–803(b)(2) defines the excited utterance exception to the hearsay rule as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." We have held that "[t]he proponent of a statement purporting to fall within the excited utterance exception must establish the foundation for admissibility, namely **personal knowledge and spontaneity.**" *Parker v. State,* 365 Md. 299, 313, 778 A.2d 1096, 1104 (2001)(emphasis added). The State readily met this standard when Officer Davis testified that he observed a man screaming in pain after being stabbed in the eye. We see no abuse of the trial judge's discretion in allowing this testimony.

Perhaps DeLeon seeks to weave an unpreserved prejudice argument (e.g. evidence that "the Bloods did it" is unduly prejudicial unless it is established that DeLeon is a Blood) into the lack of foundation objection that he articulated at trial. This is not permissible because his basis for objection was simply not made sufficiently clear for the trial court to understand and rule on it. We glean from the trial court's response to DeLeon's objection—"how much more excited can you get"—that the trial court perceived the objection to be that insufficient foundation was laid to introduce an "excited utterance." This was a reasonable interpretation of defense counsel's objection, and the court's ruling did not constitute an abuse of discretion.

Additionally, the court said that it did not "think it is necessarily being offered for the purpose of even showing that the Bloods are a gang. It is an identification issue." This response suggests that the court was still focusing on defense counsel's argument that the State had to show DeLeon was a

Blood as a foundation to admitting the victim's statement. The court was saying, in essence, that there was no need to show DeLeon was a Blood, when the victim's statement was introduced merely to show identification of the men who assaulted the victim. Although reference to the "Bloods" may not have been necessary in order to identify them because the victim named his three assaulters, clearly the trial court was focused on DeLeon's argument that a better foundation must be laid, not on whether mention of the Bloods was either relevant or unduly prejudicial, as DeLeon seeks to argue here. These latter two arguments were not raised by DeLeon, or ruled upon by the court, and are waived for purposes of appeal. *See* Maryland Rule 8-131(a)("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court").

### Other Gang Evidence Introduced By The State

■ DeLeon also argues irrelevancy and prejudice arising from other gang evidence introduced by the State at trial. In the words of his brief:

The State repeatedly argued at trial that the gang association helped to show commonality between [DeLeon] and his co-defendants, Mr. Payne and Mr. King. Even if such commonality was relevant to an issue in the case, the State could have easily demonstrated it without mentioning gangs. Multiple witnesses testified for the State that [DeLeon] and Mr. Payne and King were always together. [DeLeon] himself admitted that he was friends with both individuals, played basketball on the same team, and was often associating with them in public. The additional information that all three wore red and were suspected gang members provided no additional probative value to the issue of commonality. The admission of such evidence merely served to prejudice the jury due to the violent reputation of gangs in general and of "the Bloods" in particular.

Again, though, DeLeon failed to make timely objections to this testimony. As the State points out:

DeLeon raised no objection to Correctional Officer Davis's testimony that she saw DeLeon together with Yusef Payne and Clister King on a daily basis, in the cafeteria and out in the yard. There was no objection to Officer Davis's testimony that the group wore red clothing or bandanas every day and that, based on her personal experience, wearing red in prison signified membership in the Bloods gang. Likewise, there was no objection to Lieutenant Perez's testimony that the Bloods operated within the Maryland prison system, that the Bloods' signature color was red, and that inmates generally were allowed to wear their "colors" in the yard so that the staff would know "who they are and where they're at." Nor was there any objection to Lieutenant Perez's testimony that he had seen DeLeon, Payne and King wearing red at JPRU, thereby "showing their colors." (Record citations omitted.)

We agree with the State's conclusion that "[b]ecause DeLeon lodged no objection to this evidence at trial, any appellate complaint about the admission of the evidence has been waived." Objections are waived if, at another point during the trial, evidence on the same point is admitted without objection. *Peisner v. State*, 236 Md. 137, 145–46, 202 A.2d 585, 590 (1964), *cert. denied*, 379 U.S. 1001, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965). DeLeon made no objection when Officer Davis testified that:

- DeLeon associated with King and Payne;
- DeLeon, King, and Payne wore red; and
- DeLeon, King, and Payne wore red, sat together in the cafeteria, and congregated in the yard.

DeLeon also remained silent when Officer Perez testified that:

- There are gangs at the Maryland DOC;
- He was familiar with gang signs and clothing;
- The Bloods wore red and red clothing, which assisted prison officials in identifying gangs; and

- He saw DeLeon and other men in his group wearing red colors at JPU.

DeLeon's counsel did not object when, on cross-examination, DeLeon was asked about, and denied:

- Wearing red bandanas and articles of clothing;
- Seeing anyone wear a red hat, though acknowledging seeing people wear bandanas; and
- Being in a gang.

DeLeon also testified, without objection, that there were Bloods in the Maryland DOC and that red was one of their colors. The admission of all of this evidence without objection disallows DeLeon's challenges to any evidence of his association with King and Payne, DeLeon's use of the color red, and the implications of the color red.

When Davis testified that DeLeon's prison associates were members of the Bloods, DeLeon asserted the highly prejudicial nature of being labeled as a member of a gang and his objection was sustained:

[Prosecutor]: The men that you have described, other than Mr. DeLeon, did they have a reputation in the prison of being members of the Bloods?

[Officer Davis]: Yes.

[Defense Counsel]: I would object to that. Reputation?
* * *

[Defense Counsel]: Being labeled as a Blood member of a gang is highly prejudicial. So it is only going to be able to come in under—circumstances [sic].

Counsel is arguing that is the motive behind this that she may or may not be able to get out from the victim. But to have this witness testify based upon her expertise and— therefore he is a member of the Bloods would be so prejudicial that, in my opinion, it could cause a mistrial.

As a result of this objection, the court limited Davis to her observations that may "suggest" gang membership. This led to further discussion:

[Defense Counsel]: If she was coming forward with a card that says I'm a member of the Bloods or that he made an acknowledgment that he is in the Bloods, **I would have no legitimate objection.** Other than that I think I do.

[Prosecutor]: But these are secretive groups.

[Court]: —their cards are worn around their head and the bands [sic]. And I think that you are free—

[Prosecutor]: Okay.

[Court]: I mean based on— [inaudible] so far.

[Prosecutor]: Okay.

[Court]: You are free to— [inaudible] facts that suggest that she has made observations.

[Prosecutor]: Okay.

[Court]: Or heard things from him or there are other ways that she can—that might tend to get to where you want to go in terms of membership. (Emphasis added.)

DeLeon did not argue at trial that the ensuing testimony— limited by the trial court to personal observations—was inadmissible. Because this testimony was admitted without objection, it is unpreserved for our review.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**