75 A.3d 1055

**Rickey HALL**

v.

**STATE of Maryland.**

**No. 1306, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

Sept. 10, 2013.

Marc A. DeSimone, Jr. (Paul B. DeWolfe, Public Defender, on the brief), Baltimore, MD, for Appellant.

Carrie J. Williams (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: MATRICCIANI, HOTTEN and ARRIE, W. DAVIS (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

Rickey Hall, appellant, was indicted in the Circuit Court for Baltimore City for possessing a regulated firearm after having been previously convicted of a disqualifying crime; wearing, carrying, or transporting a handgun; and wearing, carrying, or transporting a handgun in a vehicle. After a jury trial, appellant was convicted of the possession charge and acquitted of knowingly wearing, carrying, or transporting a handgun in a vehicle. The court declared a mistrial as to the wearing, carrying, or transporting a handgun charge. Appellant was

sentenced to five years of incarceration. He then noted this timely appeal.

## QUESTIONS PRESENTED

Appellant presents the following questions, which we have consolidated and rephrased to facilitate review: [1]

I. Did the trial court err in giving an *Allen*-type [2] instruction which did not strictly conform to the pattern "duty to deliberate" instruction and by conferring with a juror who, during polling, indicated that she did not agree with the foreperson's announced verdict for Count Two?

II. Did the trial court err in limiting cross-examination of a police officer concerning other persons having been charged with possession of the handgun at issue in this trial?

For the reasons that follow, we answer no to both questions and affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

On March 23, 2010, Detectives Gary Schaekel and Frank Friend, Jr.,[3] of the Baltimore City Police Department, were patrolling the Wildwood area of Baltimore City in a marked

---

**1.** Appellant presented his questions as follows:

1. Did the lower court err in giving an *Allen*-type instruction which did not conform to the pattern instruction and repeatedly informed jurors—including one hold-out juror singled out for comment—that they had "a duty to decide the case"?

2. Where one juror indicated during a poll of the jury that she did not agree with the purported verdict announced by the foreperson, did the lower court impermissibly engage in coercive actions by directly questioning the juror and repeatedly asking her if she agreed with the foreperson's verdict?

3. Did the lower court err in limiting Mr. Hall's cross-examination of a police officer as to the fact that another person was charged with possessing the handgun at issue in this trial?

**2.** *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

**3.** Detectives Schackel and Friend were uniformed patrol officers when these events occurred, but were promoted to detective status prior to trial.

police vehicle. The detectives spotted a maroon Buick that failed to display a Maryland license plate on the front end of the vehicle. They engaged the lights and sirens of their police vehicle and followed the Buick, but the Buick did not stop. After further pursuit, and with the assistance of other officers in the area, Detectives Schaekel and Friend were eventually able to stop the Buick.

There were three occupants in the Buick: a driver, a front passenger, and appellant, the rear passenger. Upon stopping the Buick, Detective Friend jumped out of the police vehicle with his gun drawn. When Detective Friend approached the Buick on the passenger side, he could observe appellant through the windshield. Appellant reached into his waistband, pulled his arm out, and then leaned forward as if to put something on the floor. Detective Friend then walked around to the driver's side of the vehicle, opened the rear door, and observed appellant kicking something. Detective Friend looked down and noticed the barrel of a gun. Detective Friend arrested appellant. The detectives did not find any other weapons or contraband in the vehicle or on any of the individuals. The detectives learned later that the gun found in the car did not belong to appellant or anyone else in the car.

As noted above, appellant was charged with several firearm offenses, and he was tried before a jury in the Circuit Court for Baltimore City. At trial, during the cross-examination of Detective Schaekel, defense counsel attempted to question Detective Schaekel about charges against the other two individuals who had been in the car during the stop. Appellant attempted to establish that both of these individuals may have been charged with possession of the same handgun at issue in the present case. Although defense counsel was successful in asking whether the driver of the car, Dontate Anderson, had been charged, the court precluded, upon the State's objection, any further questioning related to charges against these individuals:

> [DEFENSE COUNSEL]: And in that arrest, case disposition report, you indicate that there's been a handgun violation with respect to Mr. Anderson, correct?

DETECTIVE SCHAEKEL: Correct.

[DEFENSE COUNSEL]: And as a matter of fact, Mr. Anderson was charged with that handgun, correct?

DETECTIVE SCHAEKEL: Correct.

[DEFENSE COUNSEL]: And Mr. Anderson was indicted—

THE STATE: Objection.

COURT: Sustained.

[DEFENSE COUNSEL]: Well, was there a time when Mr. Anderson was Mr. Hall's co-defendant?

THE STATE: Objection.

THE COURT: Why are we talking about cases not in the courtroom? The jury is sitting here patiently for this case. Can't wait for it to get back to it.

[DEFENSE COUNSEL]: I—

THE COURT: Objection is sustained.

[DEFENSE COUNSEL]: Okay. Now with respect to—

THE COURT: And the jury is instructed to disregard any reference to that testimony or those references made by Counsel, because they are absolutely not part of this case and I don't have any idea what they're about. And so, therefore, we do not encourage them to be mixing in with cases that we do know about, which is this one. Moving right along.

[DEFENSE COUNSEL]: With respect to Defense Exhibit for ID purposes, for No. 4, who does that relate to?

DETECTIVE SCHAEKEL: Anthony Stevenson.

[DEFENSE COUNSEL]: And he was—

THE COURT: Are we—do you want to come up here? I mean, are we going to have this repeated one after the other?

[DEFENSE COUNSEL]: Of course we are, Your Honor. They're relevant.

THE COURT: Well, why don't I just put it on tape and I'll push a button.

[DEFENSE COUNSEL]: Your Honor, that's—

THE COURT: The objection is sustained by the Court.

After approximately one hour of deliberation, the jury submitted a question to the court concerning the legal definition of "transport"—an element associated with two of the counts with which appellant was charged. "Transport" was not legally defined in the jury instructions or in relevant annotations, so the court provided the jury with the Merriam–Webster Dictionary definition, which the court read: " 'to transfer or convey from one place to another,' which is the common sense understanding of it too."

After the lunch recess and another 30 minutes of deliberation, the jury indicated that it had reached a unanimous verdict on all counts. When the foreperson began announcing the jury's verdict, however, there was confusion as to the verdict for Count One,[4] possession of a handgun after having been previously convicted of a disqualifying offense, and the court instructed the jury to continue deliberating. Approximately six minutes later, the jury submitted a note to the court, which read: "We have a juror who is holding out & it will be *impossible* [underlined twice] to come to a unanimous verdict." The court conferred with appellant's counsel and the State and indicated that it was going to give an *Allen*-type charge to the jury. Appellant's counsel objected, noting that the jurors had been deliberating for less than two hours total. Despite counsel's objection, the court administered the following instruction to the jury:

> Thank you, ladies and gentlemen. Please be seated. We have a note which I have read to Counsel and [appellant] that you have a juror who is holding out and it will be impossible to come to a unanimous verdict. Now, you have told us without a question from us the nature of this inability to reach a unanimous verdict. Meaning, specifically, that it's possibly a single juror. So, of course, I don't

---

4. The foreperson announced a Not Guilty verdict, which led to confusion among the jurors.

want to know who that is and I don't want to in any way seem critical of any juror's decision. Because as I've said often, it's none of my business legally or otherwise.

But I do have a responsibility as the judge to remind you of your duty to decide the case and as I said earlier and I'll just reread what I said earlier. I said it must be the considered judgment of each of you, in order to reach a verdict, all of you must agree. Your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement. That is an important element of this as important as the other elements. If you can do so without violence to your own individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations, do not hesitate to reexamine your own views. You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or affect [sic] of the evidence only because of the opinion of your fellow jurors or the mere purpose of reaching a verdict.

So what that says, in addition to my having said, that you have a duty to decide the case. What that says it [sic] that you are as jurors and judges of the fact obligated to reach decisions in your own head so to speak, based upon the evidence and the law and no other standard. And at the same time, listen to one another and be prepared, if persuaded, to change your opinion, as I speak this to all 12 jurors and that's—it's a really important element of the jury process, where the jurors speak to one another, you know. Civil juries are now six, not 12, but serious criminal cases are tried by 12 and there's a reason for that in addition to history. There is a reason, because it means that 12 people are listening to the evidence and listening to the facts and listening to those facts and listening to my instruction of law and then collaborating with an open mind to what everyone else is saying and opining about what they have seen and heard in this courtroom during this trial.

So it's my responsibility to send you back to the jury room, keeping that important direction in mind and that keeping in mind the importance of decision making as jurors. So, I know it's not something that you will receive with great pleasure but that's my duty and I send you back and ask you to continue to deliberate and remember what deliberate means? Expressing yourself and listening to one another. That's very important. Thank you very much. You're excused to continue your discussions.

Following the court's instruction, appellant's counsel raised again his objection to the court's instruction, additionally objecting to the form of the instruction given. Counsel argued that the court did not adhere to a formal *Allen*-type charge and instead gave an informal, "ad-libb[ed]" version of the instruction. The court responded that it "respect[ed]" counsel's comments, but took no further action.

About an hour later, the jury again indicated that it had reached a unanimous verdict. As the clerk began reading each count individually, the foreperson announced the verdicts on behalf of the jury. The foreperson indicated that the jury found appellant guilty of Count One, possession of a firearm after having been convicted of a disqualifying crime; guilty as to Count Two, wearing, carrying, or transporting a handgun; and not guilty as to Count Three, wearing, carrying, or transporting a handgun in a vehicle. During juror polling, however, one juror stated that she disagreed with the foreperson's announced verdict for Count Two:

CLERK: Juror No. 6, you heard the verdict of your Foreperson, is your verdict the same?

THE JUROR: No.

THE COURT: Who was that, please?

CLERK: Juror No. 6, Your Honor.

THE COURT: Ma'am, didn't we just ask if there was unanimity.

THE JUROR: But I didn't agree with number two, the transport. That's what I didn't understand.

\*　　\*　　\*

THE COURT: Okay. Now, Juror No. 6, we're looking now at the same verdict sheet, correct?

THE JUROR: Yes.

THE COURT: And you've heard the verdict of guilty as to the first paragraph of the first count, yes? You heard that?

THE JUROR: Yes.

THE COURT: And you agree with that or not?

THE JUROR: Yes.

THE COURT: All right. Now we're on number 2. Do you find that Rickey Hall did wear, carry, or transport a handgun? The verdict rendered by your foreman was guilty. Do you agree or disagree with that?

THE JUROR: I disagree because I did not get the transport part.

THE COURT: So, the verdict is not unanimous as to number 2? Is that what you're saying, ma'am?

THE JUROR: Yes, because the transport part.

THE COURT: When you say that, when you say, because of the transport part. What do you mean by that question or comment?

THE JUROR: Like the transport part, because he was in the back seat, I do not believe that he was transporting.

THE COURT: All right. Well I can't have a discussion with you, I mean not—because of my role, okay. But in terms of my role as a judge of the law, I'm reading that question to read this way, do you find that Rickey Hall did wear, comma, carry or transport a handgun.

THE JUROR: And I did not believe that he had the gun. No, I don't.

THE COURT: Okay. . . .

All of the remaining jurors agreed with the foreperson's announced verdict. After juror polling concluded, the clerk hearkened the jury as to Count One. The Court then asked the jury: "And that's unanimous, correct?" One juror, the record is unclear as to which juror, responded, "Yes." The Court then asked, "Juror No. 6, you agree with that verdict, yes?" Juror Number Six responded: "Yes, I agree with it." In a bench conference immediately following, defense counsel requested a mistrial, arguing that Juror Number Six was "not comfortable with the verdict." Defense counsel asked the court to either allow the jurors to continue deliberating or to declare a mistrial. Although the court stated that it was denying counsel's motion, it did declare a mistrial as to Count Two. The clerk then hearkened the jury as to Count Three, and the Court asked the jury: "Everyone, right?" The jurors responded: "Yes." Appellant was sentenced to five years of incarceration, and he noted this timely appeal.

## DISCUSSION

### I.

#### A.

Appellant first contends that the *Allen*-type instruction given to the jury deviated impermissibly from the approved pattern instruction, *infra,* and was unduly coercive. Appellant argues that the trial court overemphasized the jury's responsibility to reach an agreement, and that the court erred in advising the jury of a duty to *decide* the case rather than a duty to *deliberate.* Appellant also contends that the trial court's preface to this instruction, in which it noted that a single juror appeared to be the barrier to a unanimous verdict, made the instruction impermissibly coercive. Although we do not recommend or condone all of the language used by the trial court here, when viewing the instruction in its entirety, we do not believe that it deviates in substance from the pattern instruction, and reversal is therefore not required.

An *Allen*-type charge refers to the type of instruction administered to juries upon an indication that they are

deadlocked, or initially as a general unanimity and duty to deliberate instruction before the jury commences deliberations. *Thompson v. State,* 371 Md. 473, 483, 810 A.2d 435 (2002). "[T]he decisions as to whether to utilize an Allen-type charge, when to employ it, and what words should be selected are best left to the sound discretion of the trial judge." *Kelly v. State,* 270 Md. 139, 143, 310 A.2d 538 (1973). When giving an *Allen*-type instruction following an indication that the jury is deadlocked, a trial court must be careful that its instruction does not coerce the jury into reaching a verdict. *Id.* at 144, 310 A.2d 538. Avoiding the coercion of a verdict is critical, because the jury's verdict must be unanimous, and unanimity "embraces not only numerical completeness but also completeness of assent, *i.e.,* each juror making his or her decision freely and voluntarily, without being swayed or tainted by outside influences." *Caldwell v. State,* 164 Md.App. 612, 635, 884 A.2d 199 (2005) (citing *Bishop v. State,* 341 Md. 288, 294, 670 A.2d 452 (1996)). Out of concern that the language of a traditional *Allen*-charge may pressure jurors in the minority to abandon their own views and agree with the views of the majority, the Court of Appeals has rejected traditional *Allen*-charge language in favor of the instruction recommended by the American Bar Association. *See, e.g., Burnette v. State,* 280 Md. 88, 96, 371 A.2d 663 (1977) ("[The ABA-approved instruction] is superior to the traditional Allen instruction in several respects. It does not charge the minority to doubt the reasonableness of its convictions when they are not concurred in by the majority. It thus avoids the coercive tendency of the Allen charge."). Maryland Criminal Pattern Jury Instruction (MPJI–Cr) 2:01 closely follows this instruction, and provides:

The verdict must be the considered judgment of each of you. In order to reach a verdict, all of you must agree. In other words, your verdict must be unanimous. You must consult with one another and deliberate with a view to reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. During deliberations, do not hesitate to reexamine your own views.

You should change your opinion if convinced you are wrong, but do not surrender your honest belief as to the weight or effect of the evidence only because of the opinion of your fellow jurors or for the mere purpose of reaching a verdict. Maryland Pattern Jury Instructions § 2:01 (2012).[5]

When an *Allen*-type instruction is given as the result of an apparent deadlock, the trial court "should closely adhere to the wording of the ABA recommended instruction." *Kelly*, 270 Md. at 144, 310 A.2d 538. However, the court is not "imprison[ed] . . . within the walls of foreordained verbiage[,]" and the trial judge may personalize the charge. *Burnette*, 280 Md. at 98, 371 A.2d 663 (citing *Kelly*, 270 Md. at 142, 310 A.2d 538). When the trial court does not adhere closely to the language of the approved instruction, we must review the court's instruction carefully to determine "whether the province of the jury has been invaded and the verdict unduly coerced." *Kelly*, 270 Md. at 144, 310 A.2d 538. Any deviation from the pattern instruction should be largely in form and style, and the instruction must adhere to the spirit and substance of the ABA-approved instruction. *See Burnette*,

---

5. The ABA-approved instruction which the Court of Appeals cited with approval in *Kelly* is as follows:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. (In criminal cases substitute the following: Since this is a criminal case, you are judges—judges of both the law and the facts.) Your sole interest is to ascertain the truth from the evidence in the case. *Kelly*, 270 Md. at 143–44, 310 A.2d 538 (quoting Instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 97–98 (D.C.1961)).

280 Md. at 98, 101, 371 A.2d 663 ("Deviations in substance will not meet with our approval. Coercion of the jury for the purpose of breaking a deadlock must be avoided.").

 ■ The court's instruction here was given following an indication from the jury that it was hopelessly deadlocked. In its instruction, the trial court included the content of MPJI–Cr 2:01 in its entirety, adding some language before and after the pattern instruction, as well as one sentence within the pattern instruction. It is the added language that appellant contests. However, we do not believe that the added language altered the substance of the pattern instruction.

Appellant contests the trial court's instruction that the jury had a "duty to decide the case" and emphasis given to the portion of the pattern instruction that encourages jurors to "deliberate with a view to reaching an agreement." While the language used by the court here comes close to instructions that have been rejected as impermissibly coercive, we believe that the instruction given here is distinguishable from those cases. In *Thompson v. State*, the Court of Appeals held that the trial court erred in giving what the trial judge referred to as an "attitude of jurors" instruction. 371 Md. at 478–79, 810 A.2d 435. There, the trial court's instruction included the following: "The final test of the quality of your service will lie in the verdict which you return to the Court, not in the opinions any of you may hold as you retire." *Id.* at 479, 810 A.2d 435. The trial court also advised:

> The attitude and conduct of jurors at the outset of their deliberations are matters of considerable importance. It is rarely productive or good for a juror upon entering the jury room to make an emphatic expression of his or her opinion on the case or to announce a determination to stand for a certain verdict.

*Id.*

In rejecting the trial court's instruction, the Court of Appeals reasoned that "[s]uch language is suggestive of the primacy of collective judgment over individual principle and honest conviction." *Id.* at 487, 810 A.2d 435. It explained that the

concept of a "final test" implies that there is a standard of service to which a juror should aspire, one that requires a verdict to be reached rather than one that requires consideration of individual conviction and whether individual conviction thoughtfully can be reconciled with collective judgment.

*Id.* at 486, 810 A.2d 435.

The present case stands in contrast. Here, although the trial court referred to a "duty to decide," the court repeatedly emphasized the importance of individual judgment, and advised that individual convictions should not be ceded for the purpose of reaching a verdict:

> Each of you must decide the case for *yourself* .... You should change your opinion *if* convinced you are wrong, but *do not surrender your honest belief* as to the weight or affect [sic] of the evidence only because of the opinion of your fellow jurors *or the mere purpose of reaching a verdict.*

(Emphasis added).

Moreover, in the present case, the second time the court referred to a duty to decide the case, it explained:

> What that says it [sic] that you are as jurors and judges of the fact[s] obligated to reach decisions *in your own head* so to speak[.]

(Emphasis added). The judge's instruction, read in context, was not that the jury had a duty to reach a *collective* decision or verdict, but rather an instruction that each juror must reach a decision individually, and that they should do so based on their own convictions and deliberation with other jurors. Although the judge advised that deliberating "with a view to reaching an agreement" is an "important element" of the deliberation process, this statement was followed by the qualification contained in MPJI–Cr 2:01: "If you can do so without violence to your own individual judgment." [6] Furthermore,

---

6. The wording in the pattern instruction is "if you can do so without violence to your individual judgment." MPJI–Cr 2:01.

the judge did not instruct that deliberating with a view to reaching an agreement was a *more* important element than other parts of the instruction, but only that it was *as* important. For these reasons, the instruction, in its entirety, adheres to the spirit of MPJI–Cr 2:01.

In *Burnette v. State,* the Court of Appeals rejected an instruction which advised:

It is your duty to decide this case if you can conscientiously do so, and you should listen with a disposition to be convinced to each other's arguments. If your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct.

280 Md. at 91, 371 A.2d 663.

The *Burnette* Court held that such an instruction was impermissibly coercive and an abridged version of original *Allen*-charge language rather than a personalized version of the ABA-approved instruction. *Id.* at 98, 100, 371 A.2d 663. The Court noted:

It is difficult to imagine a minority juror who would not be placed in some discomfort on hearing this instruction. Criticism runs directly to him, and he might understandably conclude that proper "deference" to the opinions of the majority demands that he abandon his conscientious position.

*Id.* at 100, 371 A.2d 663.

Furthermore, in *Burnette,* the majority was not criticized, and the Court reasoned that "the instruction might tend to unduly strengthen the majority's convictions[.]" *Id.* The present case is distinguishable. Although the court preceded the *Allen*-type instruction by noting that the jury had indicated that the "nature of [the] inability to reach a unanimous verdict" was "possibly a single juror," the court stated that it did not "want to in any way seem critical of any juror's decision." Later in its instruction, the court specifically stated that it was "speak[ing] this to all 12 jurors[.]" Therefore, in context, the *Allen*-type charge here should not have been

viewed as directed at any particular juror, but at the jury as a whole, which had indicated it was impossibly deadlocked. As noted *supra*, the trial court went on to instruct the jurors that none of them should "surrender [an] honest belief as to the weight or affect [sic] of the evidence only because of the opinion of your fellow jurors[.]" This language is in direct contrast to the trial court's advisement in *Burnette* that: "If your views are contrary to those of the vast majority you should consider whether your views, which make no impression on the minds of so many equally intelligent jurors, are correct." *Id.* at 91, 371 A.2d 663. The instruction in *Burnette* encouraged jurors in the minority to doubt the validity of their beliefs, not shared by a majority of jurors, whereas the instruction in the present case advised jurors *not* to cede beliefs merely because they were contrary to those of fellow jurors.

The fact that the trial court clarified that its instruction was not intended as criticism of any particular juror also distinguishes the present case from *Butler v. State*, 392 Md. 169, 896 A.2d 359 (2006), on which appellant relies to argue that a trial court is unduly coercive when it criticizes the views of one particular juror. In *Butler*, the court received a note indicating that one juror did "not trust the police no matter the circumstance." In responding to this note, as well as a request to view a recording of closing arguments, the trial court stated:

> The second note we're essentially going to ignore. It says we have one juror who does not trust the police no matter the circumstance. Anybody who had felt that way should have said so in voir dire so a challenge could have occurred, *and if anybody deliberates with that spirit now, I suggest they might be violating their oath.*

*Butler*, 392 Md. at 178, 896 A.2d 359 (emphasis in original).

Therefore, the trial court in *Butler* clearly singled out and criticized the view held by one particular juror, in the middle of the jury's deliberation. The Court of Appeals reasoned that such a response to the jury's note was unduly coercive:

That person, whoever he or she might be, could reasonably conclude, or feel compelled to conclude, that he should change his position and agree with the majority because of the fear of the repercussions he or she may face.

*Id.* at 187, 896 A.2d 359.

The trial court in the present case specifically indicated that it did not want to appear critical of any juror's decision and that its instruction was addressed to all twelve jurors. Furthermore, it did not attempt to compel any one juror to adopt a particular point of view by indicating that anyone was violating an oath or acting improperly. Rather, the judge instructed the jury on its duty to deliberate, with a view to reaching an agreement, and advised that each juror must decide the case on his or her own and not abandon an honest belief because of the opinion of fellow jurors or for the purpose of reaching a verdict. Therefore, the content of the instruction given remained within the spirit of the ABA-approved instruction repeatedly cited with approval by the Court of Appeals and MPJI–Cr 2:01.

We do not encourage the kind of deviation taken by the trial court here in giving an *Allen*-type instruction to a jury after the jury indicates that it has reached an impasse and will be unable to reach a verdict. It would have been preferable for the court to have adhered more closely to the pattern instruction, without adding additional language or prefacing the instruction with reference to a single juror being the barrier to a unanimous verdict. *See Kelly,* 270 Md. at 144, 310 A.2d 538 ("After the jury has been sequestered to deliberate, we think it advisable that a trial judge, who decides to give an Allen-type charge because of an apparent deadlock, should closely adhere to the wording of the ABA recommended instruction."). When the instruction given is viewed in its entirety, however, the deviations taken by the trial court in the present case did not alter the substance of the pattern instruction or result in coercion of the jury to reach a verdict. *Id.* For these reasons, there is no reversible error.

## B.

 Appellant also contends that the trial court coerced Juror Number Six into agreeing with the announced verdict. During juror polling, this juror indicated that she disagreed with the foreperson's announced verdict as to Count Two. The trial court then questioned the juror, at which point the juror continued to assert that she did not believe appellant was transporting the gun. We need not address whether the trial court's questioning was error, however. Juror Number Six indicated disagreement specifically with the verdict as to Count Two, and the contested colloquy ensued as the result of the juror's indication of disagreement with that verdict. The court declared a mistrial on this count. Appellant was found guilty only of Count One, the possession charge, and because the juror indicated agreement with this verdict during her initial polling prior to the court's discussion with her, there is no evidence that any later agreement with the verdict for Count One was the result of coercion.[7] *See Wilder v. State*, 191 Md.App. 319, 369, 991 A.2d 172 (2010) (noting that error is harmless if a reviewing court "is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict" (citing *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665 (1976))). Therefore, reversal is not required.

## II.

 Finally, appellant raises concerns with the cross-examination of Detective Schaekel. Defense counsel attempted to question the detective about case disposition reports that indicated that the other occupants of the Buick on the night that appellant was arrested also may have been charged with possession of the firearm that officers found under the driver's seat. Appellant contends that the court erred in precluding appellant from engaging in this line of questioning. Appellant

---

7. Juror Number Six continued to express disagreement as to Count Two throughout the court's questioning, which additionally indicates that there was in fact no coercion as a result of the court's contested questions.

asserts that his best defense was that he was unaware of the firearm and that it belonged to another passenger in the Buick. He maintains that possession charges against the other passengers would support these assertions and were therefore relevant to his defense. We disagree.

"Managing the scope of cross-examination is a matter that falls within the sound discretion of the trial court. A trial court does not abuse that discretion when it excludes cross-examination that is irrelevant." *Simmons v. State*, 392 Md. 279, 296, 896 A.2d 1023 (2006) (citations omitted). Evidence is only relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. "The determination of whether evidence is relevant is a matter of law, to be reviewed *de novo* by an appellate court." *DeLeon v. State*, 407 Md. 16, 20, 962 A.2d 383 (2008). Upon concluding that evidence is relevant, we grant "wide latitude to trial judges' decisions on its admissibility." *Id.* at 21, 962 A.2d 383.

Here, the gun was found underneath the driver's seat of the Buick. Appellant was sitting directly behind the driver's seat. Detective Friend observed appellant reach into his pants, presumably pull something out of his pants, and then place it underneath the driver's seat. When the detective approached the driver's side of the Buick, he observed appellant kicking something and then saw the barrel of a gun sticking out from under the driver's seat, within appellant's reach.

During jury instructions, the court explained "possession" to the jurors as follows:

Possession means, having control over an object, whether actual or direct. Possession can be either exclusive or joint. More than one person can be in possession of the same object, at the same time. A person not in actual possession, who knowingly has both the power and the intention to exercise dominion and control over an object, has indirect possession.

\*　　\*　　\*

In determining whether a Defendant has indirect possession of an object, you should consider all of the surrounding circumstances and these circumstances include the distance between the Defendant and the object in this case, the gun, alleged gun.

■ Whether the driver or the other passenger was charged with possession of the gun in addition to appellant has no bearing on whether appellant possessed the gun. As the jurors were rightly instructed, more than one person can possess the same item, and that possession can be direct or indirect. *Parker v. State*, 402 Md. 372, 407, 936 A.2d 862 (2007) ("Possession may be actual or constructive, and may be either exclusive or joint." (citing *Moye v. State*, 369 Md. 2, 14, 796 A.2d 821 (2002))). The State was therefore entitled to pursue a theory that all three occupants of the car possessed the firearm. Although facts such as the location of the gun and the presence of other individuals in the vehicle were relevant to appellant's case, the State's *decision* whether to *charge* another occupant with possession of the gun based on those facts was an independent act; it did not make those determinative facts more or less likely to have occurred. The charges were therefore irrelevant and inadmissible at trial under Rule 5–401, and the trial court did not err in precluding appellant's line of questioning.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**